JAN CASIMIR LEWENHAUPT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24042.  Promulgated April 23, 1953.

*Samuel Taylor, Esq.*, and *Walter G. Schwartz, Esq.*, for the petitioner.

*Leonard A. Marcussen, Esq.*, for the respondent.

## OPINION.

HARRON, *Judge: Issue 1.* The initial question is whether a capital gain from the sale in 1946 of real property situated in the United States by a citizen and resident of Sweden, is exempt from income tax by the United States under the provisions of article IX of the tax convention for the avoidance of double taxation between the United States and Sweden.

Section 22 (b) (7) of the Internal Revenue Code excludes from income, "income of any kind, to the extent required by any treaty obligation of the United States."

Articles V and IX of the tax convention between the United States and Sweden, effective as of January 1, 1940, read as follows:

### Article V.

Income of whatever nature derived from real property, including gains derived from the sale of such property, but not including interest from mortgages or bonds secured by real property, shall be taxable only in the contracting State in which the real property is situated.

### Article IX.

Gains derived in one of the contracting States from the sale or exchange of capital assets by a resident or a corporation or other entity of the other contracting State shall be exempt from taxation in the former State provided

such resident or corporation or other entity has no permanent establishment in the former State.

Article XXI of the tax convention authorizes the contracting states to "prescribe regulations necessary to interpret and carry out the provisions of this convention."

The Commissioner's regulations issued pursuant to the tax convention with Sweden are contained in T. D. 4975, C. B. 1940-2, p. 51. Sections 25.6 and 25.10 of the regulations which interpret the provisions of articles V and IX, respectively, of the convention are printed, in pertinent parts, in the margin.[1]  Section 25.6 provides that income from real property situated in the United States "including gains derived from the sale of such property" is not exempt from taxation by the United States under the convention, and that the treatment of such income for the purpose of taxation by the United States is governed by the provisions of the Internal Revenue Code (section 211) applicable generally to the taxation of nonresident aliens.[2]  Section 25.10 excludes capital gains from the sale of real property situated in the United States from the provisions of article IX of the convention.

The petitioner contends that he had no "permanent establishment" in the United States during the taxable year and that the gain in question being derived from a capital asset is, therefore, exempt from tax by the United States under article IX of the convention.  He argues that the Commissioner's regulations are invalid in so far as they exclude capital gains from the sale of real property situated in the United States from the provisions of article IX of the convention. The petitioner takes the position that article V of the convention merely prohibits Sweden from taxing the gain in question and that "the intent of the Tax Convention was to exempt capital gains from the sale of real property from both Swedish and United States income taxes except where the seller had a permanent establishment in the United States."  The respondent contends that the provisions of the regulations are in accord with the intent and purpose of the convention and are a reasonable interpretation of its provisions, and hence are valid.  We agree with the respondent.

---

[1] Sec. 25.6. *Income from real property.*—Income of whatever nature derived by a nonresident alien individual resident in Sweden  *  *  *  from real property situated in the United States, including gains derived from the sale of such property, is not exempt from taxation by the convention. The treatment of such income for taxation purposes is governed by those provisions of the Internal Revenue Code applicable generally to the taxation of nonresident aliens  *  *  *.

Sec. 25.10. *Capital gains.*—Under Article IX of the convention gain derived from the sale or exchange of capital assets (other than real property) within the United States by a nonresident alien individual resident in Sweden  *  *  *  is exempt from Federal income tax unless such individual  *  *  *  has a permanent establishment in the United States. With respect to real property, see sec. 25.6 of these regulations.

[2] Prior to 1950 nonresident aliens not engaged in trade or business in the United States were taxed only on the amount of fixed or determinable annual or periodic income from sources within the United States.  They were not taxed on any capital gains unless engaged in business in the United States.  See sec. 211 of the Internal Revenue Code and Regs. 111, sec. 29.143-2.

A tax convention or treaty is construed by the courts in the same manner as is a taxing statute. Where there is an inconsistency or conflict in the text of either, a clarifying regulation is not only appropriate but is to be given great weight by the courts. *Koshland* v. *Helvering*, 298 U. S. 441, 446. And the regulation, if in harmony with the intent and purpose of the statute or tax convention and a reasonable interpretation of its provisions, is to be sustained.

In the instant case, there is a seeming inconsistency or conflict between the provisions of articles V and IX of the tax convention with respect to the treatment to be accorded a capital gain from the sale of real property, which is admittedly a capital asset. We are satisfied, from a review of the commentary on the draft of the tax convention, that the challenged provisions of the regulations are in accord with the intent and purpose of the convention, and are consistent with its provisions. See, Senate Executive Report No. 18, 76th Cong., 1st Sess. (1939).

The purpose of the tax convention is the avoidance of double taxation. It was not designed, as the petitioner urges here, to exempt a class of income from taxation by both of the contracting states. "The articles of the convention dealing with avoidance of double taxation cover the whole field of taxable income, each specific item of income being made subject to tax in one or the other of the two countries but not in both." Senate Executive Report *supra*, p. 17. Although not necessary to our decision, reference should be made to the fact that Sweden, unlike the United States, does not use citizenship as a basis for taxation. Article XIV of the convention [3] was made the key provision by means of which most of the articles dealing with the

---

[3] Article XIV reads as follows:

It is agreed that double taxation shall be avoided in the following manner:

(a) Notwithstanding any other provisions of this convention, the United States of America in determining the income and excess-profits taxes, including all surtaxes, of its citizens or residents or corporations, may include in the basis upon which such taxes are imposed all items of income taxable under the revenue laws of the United States of America as though this convention had not come into effect. The United States of America shall, however, deduct the amount of the taxes specified in Article I (b) (1) and (3) of this convention or other like taxes from the income tax thus computed but not in excess of that portion of the income tax liability which the taxpayer's net income taxable in Sweden bears to his entire net income.

(b) (1) Notwithstanding any other provision of this convention, Sweden, in determining the graduated tax on income and property of its residents or corporations or other entities, may include in the basis upon which such tax is imposed all items of income and property subject to such tax under the taxation laws of Sweden. Sweden shall, however, deduct from the tax so calculated that portion of such tax liability which the taxpayer's income and property exempt from taxation in Sweden under the provisions of this convention bears to his entire income and property.

(2) There shall also be allowed by Sweden from its national income and property tax a deduction offsetting the tax deducted at the source in the United States of America, amounting to not less than 5 per centum of the dividends from within the United States of America and subject to such tax in Sweden. It is agreed that the United States of America shall allow a similar credit against the United States income tax liability of citizens of Sweden residing in the United States of America.

avoidance of double taxation with respect to specific items of income were rendered possible. Senate Executive Report, *supra*, p. 11.

The Senate Executive Report, *supra*, in commenting on article IX of the draft, which covers gains from the sale or exchange of capital assets, makes no reference to gains from the sale or exchange of real property; the only class of property mentioned is securities.[4] The inference is reasonable and we think proper that the contracting states, having specifically provided in article V for the treatment for tax purposes of income and gain from the sale of real property, with the situs of the real property made the basis for taxation, did not intend that capital gains from the sale of real property should fall within the provisions of article IX, which ties the taxation of capital gains to a permanent establishment.

In any event, a review of the commentary on the proposed draft of the convention convinces us that no substantial change in the treatment for tax purposes by the United States of capital gains, whether derived from the sale of real property or from the sale of other capital assets situated in the United States by a citizen and resident of Sweden, was intended under the provisions of the convention. In this respect the provisions of articles V and IX of the convention dovetailed into our existing laws. Senate Executive Report, *supra*, pp. 7, 8. Under our laws in effect when the convention was ratified, the taxability by the United States of capital gains derived by a nonresident alien from sources within the United States depended on whether the nonresident alien had a "United States business or office," i. e., was engaged in trade or business within the United States. See section 211 of the Internal Revenue Code as it read prior to amendments made by the Revenue Act of 1950. The meaning of the term "permanent establishment" as used in the convention is substantially identical with the meaning of the words "United States business or office" as used in section 211 (b) of the Code. Senate Executive Report, *supra*, p. 7. Hence the same test for determining the taxability by the United States of a capital gain derived from the sale by a citizen and resident of Sweden of real property situated in the United States is applicable even if the provisions of article IX of the convention were construed as embracing gains from the sale of real property. Viewed in this light, the seeming conflict in the text of the convention between the provisions of articles V and IX is dispelled.

---

[4] Senate Executive Report No. 18, *supra*, p. 8:

Article IX, as already noticed, ties the taxation of capital gains to a permanent establishment. If, for example, a Swedish corporation has no permanent establishment in the United States and sells securities on the New York Stock Exchange, the resultant gains, if any, are not taxable under * * * this article. This principle is in accord with our existing law under which a corporation falling within the provisions of section 231 (a) or a nonresident alien falling within the provisions of section 211 (a), is not subject to tax on the gain derived from the sale or exchange of securities through a resident broker, commission agent, or custodian.

We conclude that the Commissioner's regulations issued pursuant to the tax convention with Sweden, in so far as they reflect the treatment for tax purposes by the United States of gains derived from the sale of real property situated in the United States, are valid. We therefore hold that the gain derived from the sale in 1946 of real property situated in the United States by the petitioner is not exempt from income tax by the United States under the provisions of article IX of the tax convention with Sweden.

*Issue 2.* The remaining issue is whether the petitioner, during the taxable year, was engaged in trade or business in the United States within the meaning of section 211(b) of the Internal Revenue Code. If the petitioner was so engaged the capital gain in question is taxable under the provisions of section 117 of the Internal Revenue Code. Section 211 (b) of the Code, which is printed in the margin,[5] provides that nonresident aliens who are engaged in a trade or business in the United States are taxable in the same manner as citizens of the United States with respect to income derived from sources within the United States.

The issue here is whether the petitioner's activities with respect to certain parcels of improved real estate constituted engaging in a trade or business. The petitioner, during the taxable year, did not trade in, or realize gain from the sale or exchange of, securities or commodities. At the beginning of the taxable year, the petitioner owned United States securities of an approximate value of $100,000. His only security transactions during the taxable year were the purchase of additional securities with part of the proceeds from the sale of the Modesto real property, which gave rise to the capital gain in question. The respondent's argument on brief that petitioner failed to show that his security transactions did not constitute engaging in business is without merit. See *Higgins* v. *Commissioner*, 312 U. S. 212; *Evelyn M. L. Neill*, 46 B. T. A. 197.

Whether the activities of a nonresident alien constitute engaging in a trade or business in the United States, is, in each instance, a question of fact. The evidence and record before us establish, and we have found as a fact, that the petitioner's activities during the taxable

---

[5] SEC. 211. TAX ON NONRESIDENT ALIEN INDIVIDUALS.
* * * *

(b) UNITED STATES BUSINESS OR OFFICE.—A nonresident alien individual engaged in trade or business in the United States shall be taxable without regard to the provisions of subsection (a). As used in this section, section 119, section 143, section 144, and section 231, the phrase "engaged in trade or business within the United States" includes the performance of personal services within the United States at any time within the taxable year, but does not include the performance of personal services for a nonresident alien individual, foreign partnership, or foreign corporation, not engaged in trade or business within the United States, by a nonresident alien individual temporarily present in the United States for a period or periods not exceeding a total of ninety days during the taxable year and whose compensation for such services does not exceed in the aggregate $3,000. Such phrase does not include the effecting, through a resident broker, commission agent, or custodian, of transactions in the United States in commodities * * * or in stocks or securities.

year connected with his ownership, and the management through a resident agent, of real property situated in the United States constituted engaging in a business. The petitioner, prior to and during the taxable year, employed LaMontagne as his resident agent who, under a broad power of attorney which included the power to buy, sell, lease, and mortgage real estate for and in the name of the petitioner, managed the petitioner's real properties and other financial affairs in this country. The petitioner, during all or a part of the taxable year, owned three parcels of improved, commercial real estate. The approximate aggregate fair market value of the three properties was $337,000. In addition, the petitioner purchased a residential property, and through his agent, LaMontagne, acquired an option to purchase a fourth parcel of commercial property, herein referred to as the El Camino Real property, at a cost of $67,500. The option was exercised and title to the property conveyed to the petitioner in January 1947.

LaMontagne's activities, during the taxable year, in the management and operation of petitioner's real properties included the following: executing leases and renting the properties, collecting the rents, keeping books of account, supervising any necessary repairs to the properties, paying taxes and mortgage interest, insuring the properties, executing an option to purchase the El Camino Real property, and executing the sale of the Modesto property. In addition, the agent conducted a regular correspondence with the petitioner's father in England who held a power of attorney from petitioner identical with that given to LaMontagne; he submitted monthly reports to the petitioner's father; and he advised him of prospective and advantageous sales or purchases of property.

The aforementioned activities, carried on in the petitioner's behalf by his agent, are beyond the scope of mere ownership of real property, or the receipt of income from real property. The activities were considerable, continuous, and regular and, in our opinion, constituted engaging in a business within the meaning of section 211 (b) of the Code. See *Pinchot v. Commissioner*, 113 F. 2d 718.

*Evelyn M. L. Neill, supra,* and other authorities relied on by the petitioner, are distinguishable on the facts from this proceeding. The decisions of state courts cited by the petitioner defining what constitutes engaging in a trade or business under various state laws are not persuasive here. *Pinchot v. Commissioner, supra.*

We hold that the petitioner, during the taxable year, was engaged in a trade or business, and that his income from sources within the United States is taxable under section 211 (b) of the Code.

Reviewed by the Court.

*Decision will be entered under Rule 50.*