perform satisfactorily in, a junior level position in any of the fields of work enumerated in paragraph one."

In the meantime the delegation of authority as to personnel matters which had been given by the Board to Denham had been withdrawn.

Denham forwarded the rating to the Board with a vigorous and lengthy letter of protest. On October 26, 1950, after her dismissal, plaintiff received a letter from the chairman of the Board notifying her that she had been rated "fair."

To return to the charges—Mr. Denham preferred them on July 6, 1949; plaintiff was given until July 13 within which to make reply. Mr. Denham notified her that unless her reply induced him to change his mind, that she would be discharged on July 20, 1949. Plaintiff replied requesting a hearing, but Mr. Denham refused the hearing, saying that he knew all about the case anyway; and plaintiff was accordingly discharged on July 20, 1949.

All this leads us to the conclusion that the reason for plaintiff's discharge was not the unsatisfactory character of her services, but was because Mrs. Amerman wanted to get rid of her in order that her friend, Mrs. Gable, might take her job, and that she initiated a conspiracy between Mr. Shover, Mr. Shaw, Mr. Denham, and herself to bring about this result. The record convinces us that Denham was a part of this conspiracy, and that when he preferred these vague charges, and found plaintiff guilty of them and dismissed her, he was motivated not by what he thought was the good of the service, but by the aims of the conspiracy, which was to get rid of plaintiff so Mrs. Gable could have her job.

Mrs. Amerman had originally rated plaintiff "good," but when Mrs. Gable came, she rated plaintiff's services "unsatisfactory," but this was reversed on appeal. Nothing had happened since the initial "good" rating to justify Mrs. Amerman in giving plaintiff the "unsatisfactory" rating. We are convinced she did so in order that her friend Mrs. Gable might have her job. In this she was aided and abetted by Mr. Shover, Mr. Shaw, and Mr. Denham.

If we are correct in this, then the Act of August 24, 1912, 37 Stat. 539, 555, U.S.C.A. Title 5, sec. 652, has been violated, which provides that no person in the classified Civil Service shall be discharged "except for such cause as will promote the efficiency of such service * * *."

This being true, plaintiff is entitled to recover. She asks for her salary from the date of her discharge on July 20, 1949, to April 17, 1951. She may recover for the period from July 21, 1949 to April 17, 1951. The amount thereof, less earnings from other employment, is $6,969.01. Judgment for this amount will be entered.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.

**FARREL-BIRMINGHAM CO., Inc.**

v.

**UNITED STATES.**
No. 598-52.

United States Court of Claims.
June 8, 1954.

N. Barr Miller, Washington, D. C., J. Marvin Haynes, Haynes & Miller, Washington, D. C., Julius G. Day, Jr., Hartford, Conn., F. Eberhart Haynes and Oscar L. Tyree were on the briefs, for plaintiff.

J. W. Hussey, Washington, D. C., with whom was H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe and Lee A. Jackson, Washington, D. C., were on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

MADDEN, Judge.

The plaintiff corporation is in disagreement with the Government as to what is the right way to compute its excess profits tax for the year 1943. It computed its tax by the method which it claims to be right, and found the tax to be $3,489,638.68 which it paid on time. The Commissioner of Internal Revenue computed the tax by the method which he claimed to be right, and it came to $1,022,120.18 more, which he assessed, together with interest of $168,886.18. The plaintiff paid these additional sums, and filed a timely claim for refund to get them back. The claim for refund was denied, and the plaintiff brought this suit.

The dispute concerns the interpretation of certain sections of the Internal Revenue Code, 26 U.S.C.A., and the validity of a Regulation of the Treasury Department which Regulation places upon the sections of the code the interpretation for which the Government contends.

The plaintiff is a manufacturing corporation, and had work contracted for in 1943 which required more than twelve months for its completion. That fact created an accounting problem with regard to the computation of its profits on those contracts, for its income tax

and other accounting purposes. Section 41 of the Internal Revenue Code provides that a taxpayer shall compute his income, for normal income and surtax purposes, in accordance with the method of accounting regularly employed in keeping his books. The plaintiff, in keeping its books, in relation to its contracts requiring more than 12 months for completion, used the "completed contract" method of accounting, that is, it did not count its profit on such a contract until the contract was completed. It therefore computed its normal income tax and surtax on this same basis of accounting.

Our problem concerns the plaintiff's excess profits tax. The following section of the Internal Revenue Code is pertinent:

"§ 710. Imposition of tax

"(a) Imposition.

"(1) *General rule.* There shall be levied, collected, and paid, for each taxable year, upon the adjusted excess-profits net income, as defined in subsection (b), of every corporation (except a corporation exempt under section 727) a tax equal to whichever of the following amounts is the lesser:

"(A) 90 per centum of the adjusted excess profits net income, or

"(B) an amount which when added to the tax imposed for the taxable year under Chapter 1 (other than section 102) equals 80 per centum of the corporation surtax net income, computed under section 15 or Supplement G, as the case may be, but without regard to the credit provided in section 26(e) (relating to income subject to the tax imposed by this subchapter) * * *."

Section 736(b) of the Internal Revenue Code provided that a taxpayer, having contracts requiring more than 12 months for their performance, if certain other conditions existed which did exist in the case of this plaintiff, might elect, in its excess profits tax return, to compute its income from such contracts upon the "percentage of completion" method of accounting. That meant that the taxpayer could, if he so elected, apportion his profits or prospective profits on such contracts over the period of performance, thus keeping them from being "bunched" in the year in which he happened to complete the contracts. Section 736(b) said that this computation should be made "in accordance with regulations prescribed by the Commissioner [of Internal Revenue] with the approval of the Secretary [of the Treasury]."

The plaintiff elected, as it had a right to do under Section 736(b), to compute its excess profits income on the "percentage of completion" method of accounting. This produced a figure much higher than the figure which would have been produced by its regular "completed contract" method, which method, as we have said, it used for its own internal accounting, and for computing its normal tax and surtax. It then made its computations taking, under Section 710 (a)(1)(A), 90 percent of its excess profits net income, so determined, and taking, under Section 710(a)(1)(B), 80 percent of its surtax net income as actually computed for the determination of the amount of its surtax, plus and minus certain items not here in dispute. The 90 percent figure was $4,979,035.74, while the 80 percent figure, applied, of course, to a different base, was $3,563,-929.31. As provided in Section 710(a) (1) it paid the lesser amount.

The Government urges that the plaintiff having elected, for the purpose of the (A) computation, to use the "percentage of completion" method, it must do likewise in making the (B) computation. That means that it had to recompute its surtax net income as if its regular method of accounting had been the "percentage of completion" method, thereby, in this instance, getting for this purpose a higher surtax net income than the one on which it had actually computed and paid its surtax. Since Section 710(a)(1)(B) called for 80 per-

cent of that surtax net income, with certain deductions, the Government's (B) figure was much higher than the plaintiff's. It was, nevertheless, not as high as the (A) figure, and therefore set the amount of the tax.

The plaintiff points to the statute, Section 710(a)(1)(B) which as we have seen, speaks of the "surtax net income, computed under section 15". Section 15 defines the term "corporation surtax net income" and imposes the surtax.

The Government points to the language of Section 736(b) which says that the corporation may elect to compute "in accordance with regulations prescribed by the Commissioner with the approval of the Secretary" and in the following sentence says "Such election shall be made in accordance with such regulations * * *." It then points to Treasury Regulations 112, Section 35.-736(b)–3 as amended by T. D. 5388, 1944 Cum.Bull. 387, applicable to Section 736(b) of the Code, which Regulation says:

> "For such purpose, the corporation surtax net income shall be determined by computing the income from long-term contracts upon the percentage of completion method of accounting."

The Regulation is directly applicable, and, if it is valid, it settles the question. The plaintiff contends that it is invalid because it contradicts the statute. The plaintiff says that the reference in Section 710(a)(1)(B) to the "corporation surtax net income, computed under section 15", so plainly means the surtax net income as actually computed by the taxpayer in his return that that meaning cannot be changed by a Regulation. That position was taken practically without discussion in Basalt Rock Co., Inc. v. Commissioner, 9 Cir., 180 F.2d 281, certiorari denied 339 U.S. 966, 70 S.Ct. 1003, 94 L.Ed. 1375, reversing 10 T.C. 600.

The Government points out that Section 736(b) in permitting the taxpayer to use the "percentage of completion" method of accounting, says that the corporation "may elect, in its return for such taxable year for the purposes of this subchapter, * * * to compute, * * * such income upon the percentage of completion method of accounting." Since both Sections 710(a)(1)(A) and 710(a)(1)(B) are in Subchapter E of Chapter 2, which subchapter covers the subject of the excess profits tax, the Government says that it would be illogical to suppose that Congress intended that the taxpayer should use the elected method to compute what its excess profits tax would be under (A), then use another method under (B), and pay its tax on the basis of the (B) computation. This was the reasoning of the Court in the case of Sokol Bros. Furniture Co. v. Commissioner, 5 Cir., 185 F.2d 222, certiorari denied 340 U.S. 952, 71 S.Ct. 571, 95 L.Ed. 686, affirming 8 T.C.M. 239.

■■ The statute does not say that the taxpayer may so elect to compute its *excess profits net income,* which would limit the effect of the election to Section 710(a)(1)(A). It says that the taxpayer may elect, for the purposes of this (the Excess Profits Tax) subchapter, to compute *such income* upon the percentage of completion method of accounting. The preceding language of Section 736(b) shows that *such income* does not mean excess profits net income. It means the taxpayer's income. If, then, the taxpayer makes the permitted election, it must, for all subchapter E purposes, make its computation according to that election. That means that it must recompute its surtax net income on this method of accounting, since that surtax net income is the basis of the determination of the amount of the tax due under Section 710(a)(1)(B).

It seems to us that there is a fundamental inconsistency in the method of computation for which the plaintiff contends. Section 710(a)(1), in setting up alternatives (A) and (B), and fixing the tax as the lower of the two figures, must have contemplated that the figures and the methods of arriving at them should be comparable, should be based upon

similar basic data. If not so based, the results are accidental, and have no logical relation to one another.

 Regulations, especially when expressly authorized by the applicable statute, carry, of course, a strong presumption of validity. It is easy to imagine that Congress, in legislating upon so complicated a matter as the óne before us, saw the need of clarifying Regulations. The statutory ensemble does not show a clear meaning, as is evident from the conflicting decisions referred to above. In that situation, Regulations not plainly inconsistent with the statute should not be held invalid.

The plaintiff points out that the Government's computation causes the plaintiff to pay more taxes than its net income was for the year, when computed according to the completed contract method, which was its regular method of keeping its books. This asserted hardship is more apparent than real, since neither the completed contract nor the percentage of completion method had any necessary relation to the plaintiff's real financial or income status. Either method represents an arbitrary choice made for bookkeeping purposes. It is not likely that the plaintiff, in fact, received no payments on its long-term contracts until they were completed.

We think that the Court of Appeals for the Fifth Circuit in the Sokol case, and the Tax Court in that case and the Basalt Rock Company case were right. We therefore dismiss the plaintiff's petition.

It is so ordered.

JONES, Chief Judge, and LITTLETON, Judge, concur.

WHITAKER, Judge (dissenting).

I dissent. I agree with the decision of the Court of Appeals in the Basalt Rock Company case, supra.

LARAMORE, J., took no part in the consideration or decision of this case.

**OTTINGER BROS. CONST. CO.**

v.

**UNITED STATES.**

No. 399–52.

United States Court of Claims.
June 8, 1954.

F. Hamilton Seeley, Washington, D. C., for plaintiff. J. Gerald Mayer, Scott G. Rigby, Washington, D. C., on the brief.

Francis X. Daly, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

Plaintiff sues for the difference in wages specified in a construction contract and those it alleges it actually paid to its employees. The basis of the complaint is that defendant was guilty of misrepresentation in the wage scale as

