*Decision will be entered under Rule 50.*

JULES SAMANN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82467.    Filed September 14, 1961.

*Karl Riemer, Esq.*, for the petitioner.
*Joseph N. Ingolia, Esq.*, for the respondent.

ARUNDELL, *Judge:* Respondent determined a deficiency in income tax for the calendar year 1954 in the amount of $49,074.75.

The only issue remaining to be decided is whether petitioner, a nonresident alien who had a "permanent establishment" in the United States until March 15, 1954, is taxable on $69,641.77 of royalties from sources within the United States received by him between March 15 and December 31, 1954, or whether such royalties are exempt from taxation under article VIII of the income tax convention between the United States and the Swiss Confederation proclaimed by the President of the United States on October 1, 1951, and section 509.110 of the regulations adopted thereunder.

Respondent conceded at the hearing that the royalties received between March 15 and December 31, 1954, amounted to $69,641.77 instead of the $73,671.88 (a reduction of $4,030.11) determined by

him in the notice of deficiency and that effect should be given to this concession in any recomputation to be made under Rule 50.

FINDINGS OF FACT.

Petitioner is an individual and a citizen of Canada. From not later than September 29, 1953, continuously to the present time petitioner has resided in Switzerland, either in Zug, where he resided when the petition herein was filed, or in Zurich. At the present time petitioner resides with his wife and two children at Klosbachstrasse 43, Zurich, Switzerland.

On or about August 15, 1955, petitioner filed a United States nonresident alien income tax return, Form 1040B, for the calendar year 1954, with the director of internal revenue at Baltimore, Maryland. The return was filed on the cash basis, as were previous returns filed by petitioner.

Petitioner was born in Germany. He left Germany in 1934. In September 1939 petitioner was in Canada. He remained in Canada throughout World War II and thereafter until 1948. During his stay in Canada he was naturalized as a Canadian citizen.

Throughout his adult life petitioner has been connected with chemical manufacturing businesses. Early in 1948 he settled in Buffalo, New York, and established a sole proprietorship called Jules Samann Laboratories. In February 1951, petitioner moved the business base of his sole proprietorship to Watertown, New York.

In 1952 petitioner conceived the idea of a special air-freshener for automobiles and he and one Prentice formed a partnership known as the Car-Freshner Company to exploit petitioner's idea. Prentice withdrew from the partnership early in 1953 and, after such withdrawal, petitioner operated the Car-Freshner Company as a sole proprietorship.

In September 1953 petitioner left Watertown, New York, for Switzerland and from that date to this he has been residing in Switzerland. With his departure, the sole proprietorship of Jules Samann Laboratories ceased to exist but the Car-Freshner Company remained in business and remained a sole proprietorship owned and operated by petitioner until March 15, 1954.

On or about March 15, 1954, petitioner caused to be organized, under the laws of the State of New York, a corporation known as the Car-Freshner Corporation. Petitioner transferred to the Car-Freshner Corporation all the assets of the sole proprietorship, Car-Freshner Company, consisting of cash, accounts receivable, inventory, equipment, furniture and fixtures, and minor miscellaneous assets, in exchange for 100 shares of voting stock, being all the authorized and issued stock of the Car-Freshner Corporation. Petitioner retained in himself the ownership of all trademarks, patents, and rights in

and to certain secret processes and formulas relating to the manufacture of the automobile air-fresheners and other products manufactured and sold by the Car-Freshner Company and subsequently the Car-Freshner Corporation. Petitioner granted the Car-Freshner Corporation the right to use the aforesaid trademarks, patents, and secret processes and formulas, upon payment to petitioner of certain agreed royalties for said right to use.

During the period March 16, 1954, to December 31, 1954, petitioner received from sources within the United States the amount of $69,-641.77, constituting royalties for the right to use certain patents, trademarks, and secret processes and formulas owned by petitioner. Of the royalties so received, the amount of $14,141.77 was received by petitioner from the Car-Freshner Corporation and the balance of $55,500 was received by him from sources other than the Car-Freshner Company or the Car-Freshner Corporation.

In his aforesaid return filed for the calendar year 1954 petitioner disclosed the receipt by him of royalties in the aggregate amount of $69,641.77, as referred to above, but stated that the same were being treated by him as exempt from taxation by the United States by virtue of the provisions of article VIII of the income tax convention between the United States and the Swiss Confederation.

Respondent determined that the aforesaid royalties in the aggregate amount of $69,641.77 were not exempt from taxation as claimed by petitioner, and explained his determination in a statement attached to the deficiency notice thus:

You were a non-resident alien, resident of Switzerland, engaged in trade or business within the United States through a permanent establishment since you owned and operated the Car-Freshner Company at Watertown, N.Y., a sole proprietorship prior to March 15, 1954. Accordingly, you are taxable on royalties received from the United States during the year 1954 as follows * * *

OPINION.

The previously stated issue is a question of law and appears to be one of first impression.

Petitioner contends that since the royalties in question ($69,641.77) were received by him after March 15, 1954, when he no longer had a "permanent establishment" in the United States, they are "exempt from taxation" by virtue of article VIII [1] of the income tax conven-

---

[1] ARTICLE VIII

Royalties and other amounts derived, as consideration for the right to use copyrights, artistic and scientific works, patents, designs, plans, secret processes and formulae, trademarks, and other like property and rights (including rentals and like payments in respect to motion picture films or for the use of industrial, commercial or scientific equipment), from sources within one of the contracting States by a resident or corporation or other entity of the other contracting State not having a permanent establishment in the former State shall be exempt from taxation in such former State.

tion (hereafter referred to as the convention or treaty)[2] between the United States and the Swiss Confederation proclaimed by the President of the United States on October 1, 1951,[3] and section 894 of the Internal Revenue Code of 1954.[4]

Respondent contends that since petitioner did have a "permanent establishment" in the United States prior to March 16, 1954, no part of the royalties received by him during the taxable year 1954 from sources within the United States are exempt from taxation by virtue of section 509.110[5] of the regulations adopted under the authority contained in section 7805 of the Internal Revenue Code of 1954 and article XIX of the Convention.[6]

We think it must be conceded at the outset that if section 509.110 of the regulations is a valid regulation, then unquestionably no part of the royalties received during the taxable year 1954 is exempt from taxation since, under the regulations, they are *only* exempt under the provisions of article VIII "if such alien * * * at no time during the taxable year * * * has a permanent establishment in the United States" and it is an admitted fact that for the first 2½ months of the taxable year petitioner *did* have a permanent establishment in the United States.

Petitioner argues that the above-quoted portion of the regulations "if such alien * * * at no time during the taxable year * * * has a permanent establishment in the United States" constitutes an unwarranted and invalid restriction of the exemption granted by the convention and should therefore be given no effect in the disposition of this case. In support of this argument petitioner cites several United States Supreme Court cases holding that a treaty must be fairly construed and interpreted, *The Amiable Isabella*, 19 U.S. 1, 70 (1821); and that treaties are to be construed in a broad and liberal

---

[2] In *American Trust Co.* v. *Smyth*, 247 F. 2d 149 (C.A. 9, 1957),. the Ninth Circuit stated that "The Income Tax Convention between the United States and the United Kingdom has the status of a treaty, and consequently,. is 'the supreme Law of the Land.' U.S. Const., art. VI, cl. 2."

[3] See T.D. 5867, 1951–2 C.B. 75, and T.D. 6149, 1955–2 C.B. 814.

[4] SEC. 894. INCOME EXEMPT UNDER TREATY.

Income of any kind, to the extent required by any treaty obligation of the United States, shall not be included in gross income and shall be exempt from taxation under this subtitle.

[5] Sec. 509.110 Patent and Copyright Royalties and Film Rentals.—Royalties and other amounts representing consideration for the right to use copyrights, artistic and scientific works, patents, designs, plans, secret processes and formulae, trade-marks, and other like property and rights, including rentals and like payments in respect to motion picture films or for the use of industrial, commercial, or scientific equipment, which are derived from sources within the United States by a nonresident alien individual who is a resident of Switzerland, or by a Swiss corporation or other entity, are exempt from United States tax under the provisions of Article VIII of the convention *if such alien*, corporation, or other entity *at no time during the taxable year* in which such items of income are derived has a permanent establishment in the United States. [Emphasis supplied.]

[6] Article XIX

(1) The competent authorities of the two contracting States may prescribe regulations necessary to carry into effect the present Convention within the respective States.

(2) The competent authorities of the two contracting States may communicate with each other directly for the purpose of giving effect to the provisions of this Convention.

spirit, one which prefers the favoring of rights granted under it over a restrictive view of those rights. *Hauenstein* v. *Lynham*, 100 U.S. 483 (1879); *Asakura* v. *Seattle*, 265 U.S. 332 (1924); and *Jordan* v. *Tashiro*, 278 U.S. 123 (1928). See also *American Trust Co.* v. *Smyth*, 247 F. 2d 149 (C.A. 9, 1957).

We do not think the regulations in question are in conflict with any of the above well-settled principles as laid down in the cited cases. Article XIX of the Convention expressly provided that "The competent authorities of the two contracting States may prescribe regulations necessary to carry into effect the present Convention within the respective States." Substantially the same provisions as are contained in section 509.110 were contained in regulations with respect to at least seven prior treaties with other countries regarding this same type of royalty income. In two earlier very important treaties, one with Canada and one with the United Kingdom, respondent's representatives met with those countries and went over the regulations in some detail. In regard to the specific treaty here involved, the record shows that respondent's representatives furnished the Swiss representatives with a copy of the proposed regulations prior to publication for the purpose of their review and objections, if they had any to offer, and respondent's representatives did not receive any adverse comment with respect to section 509.110 from the Swiss representatives.

The first convention or treaty with a foreign country having provisions in the treaty and the regulations similar to the provisions in the present treaty with Switzerland is the tax convention between the United States and France, proclaimed by the President of the United States on January 5, 1945, effective January 1, 1945. See T.D. 5499, 1946–1 C.B. 134. Article 7 of the French treaty provided that "Royalties derived from within one of the contracting States by a resident * * * of the other contracting State * * * shall be exempt from taxation in the former State, provided such resident * * * does not have a permanent establishment there." Section 7.418 of the regulations adopted under that treaty provided thus (T.D. 5499, *supra* at 145):

Royalties * * * are exempt from Federal income tax under article 7 of the convention, provided that such individual * * * has no permanent establishment within the United States *at any time during the taxable year* in which such income is so derived. [Emphasis supplied.]

It may be noted that the above regulations were published under the authority of article 26 of the French treaty providing that "The competent authorities * * * may prescribe regulations necessary to interpret and carry out the provisions of this convention" which is also similar to article XIX of the instant Swiss treaty.

Subsequent to the above French treaty and prior to the instant Swiss treaty, the United States entered into treaties with at least six

other countries which contained provisions relating to royalties, in both the treaties and the regulations adopted thereunder, which were substantially the same as those in the treaty with France and the regulations adopted thereunder.[7]

In the instant case, article XIX of the Swiss treaty expressly provided that regulations necessary to carry into effect the present Convention within the respective States may be prescribed. "Regulations, especially when expressly authorized, * * * carry, of course, a strong presumption of validity." *Farrel-Birmingham Co.* v. *United States*, 121 F. Supp. 636 (Ct. Cl. 1954), modified on other grounds 125 F. Supp. 297; *Ruud Manufacturing Co.*, 10 T.C. 14, affirmed per curiam 173 F. 2d 222 (C.A. 3, 1949). See also *Jan Casimir Lewenhaupt*, 20 T.C. 151, affirmed per curiam 221 F. 2d 227 (C.A. 9, 1955).

In the instant case we are of the opinion that section 509.110 of the regulations is not arbitrary or unreasonable in providing that under article VIII of the treaty royalties received by a nonresident alien from sources within the United States are exempt from taxation in the United States only "if such alien * * * at no time during the taxable year * * * has a permanent establishment in the United States." Article VIII exempts the royalties only in cases of nonresident aliens "not having a permanent establishment" in the United States. Here it is admitted that petitioner did have a permanent establishment in the United States for at least a part of the petitioner's taxable year. The treaty did not specifically provide for such a factual situation and a regulation was necessary to resolve the problem. The contracting parties of the treaty realized that such situations might arise and by article XIX authorized "regulations necessary to carry into effect the present Convention * * *." We hold the present regulation (sec. 509.110) to be both reasonable and necessary and in line with similar regulations in prior treaties with other countries. We hold it to be a valid regulation. It follows that the royalties in question are not exempt from taxation under article VIII of the income tax convention between the United States and the Swiss Confederation. Due to the respondent's concession regarding the $4,030.11 item,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

FAY, *J.*, did not participate in the consideration of or decision in this report.

---

[7] The six other countries were the United Kingdom in 1946 (T.D. 5569, 1947–2 C.B. 100) ; the Netherlands in 1948, effective on Jan. 1, 1947 (T.D. 5778, 1950–1 C.B. 92) ; Denmark in 1948, effective on Jan. 1, 1948 (T.D. 5777, 1950–1 C.B. 76) ; New Zealand in 1948, effective on Jan. 1, 1951 (T.D. 5957, 1953–1 C.B. 238) ; Norway in 1949, effective on Jan. 1, 1951 (T.D. 6150, 1955–2 C.B. 793) ; and Ireland in 1949, effective on Jan. 1, 1951 (T.D. 5897, 1952–1 C.B. 89).