T.C. Memo. 2002-215


UNITED STATES TAX COURT


ROBERT M. AND PAMELA PRICE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9227-00.                    Filed August 23, 2002.


Steven R. Toscher and Michael Stein, for petitioners.

Leslie Van Der Wal and Melissa D. Arndt, for
respondent.


MEMORANDUM OPINION


WHALEN, Judge:  Respondent determined a deficiency of
$50,200 in petitioners' Federal income tax for the taxable
year 1998.  The sole issue for decision is whether
petitioners' alternative minimum tax foreign tax credit is
subject to the limitation imposed by section 59(a)(2).

Unless stated otherwise, all section references are to the Internal Revenue Code as in effect during 1998.

This issue turns on whether the application of section 59(a)(2) to petitioners is precluded by article XXIV of the Convention With Respect to Taxes on Income and on Capital (hereinafter U.S.-Canada treaty), Sept. 26, 1980, U.S.-Can., T.I.A.S. No. 11087, as amended by four protocols (viz Protocol Amending the Convention Between the United States of America and Canada With Respect to Taxes on Income and on Capital, Sept. 26, 1980, S. Treaty Doc. 98-7 (1983) (hereinafter First Protocol); Protocol Amending the Convention Between the United States of America and Canada With Respect to Taxes on Income and on Capital, Sept. 26, 1980, as amended by the Protocol on June 14, 1983, S. Treaty Doc. 98-22 (1984) (hereinafter Second Protocol); Revised United States-Canada Protocol to Amend the 1980 Treaty on Income and on Capital, Sept. 26, 1980, as amended by the Protocols, June 14, 1983, and March 28, 1984, S. Treaty Doc. 104-4 (1995) (hereinafter Third Protocol); and Protocol Amending the Convention Between the United States of America and Canada With Respect to Taxes on Income and on Capital, Sept. 26, 1980, as amended by Protocols, June 14, 1983, March 28, 1984, and March 17, 1995, S. Treaty Doc. 105-29 (1997) (hereinafter Fourth Protocol)).

The parties agree that, if the Court finds that petitioners' alternative minimum tax foreign tax credit is subject to limitation under section 59(a)(2), then the deficiency in petitioners' Federal income taxes for 1998 is $50,200. They further agree that, if the Court finds that petitioners' alternative minimum tax foreign tax credit is not limited by section 59(a)(2), then no deficiency exists in petitioners' income tax for 1998.

The parties submitted this case fully stipulated pursuant to Rule 122 of the Tax Court Rules of Practice and Procedure. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in Santa Barbara, California.

At all times material to this proceeding, Mr. Price was a citizen of the United States of America and Mrs. Price was a citizen of Canada. They were husband and wife, and they resided in Canada. Throughout 1998, Mr. Price was employed as a stockbroker by Newcrest Capital, Inc., a Canadian corporation, and all of the income that he received during 1998 came from Canadian sources. Mr. Price reported his income on his separate Canadian income tax return, and he paid income taxes to Canada. Mrs. Price was not employed during 1998 and she

reported zero tax liability on her separate Canadian income tax return.

Petitioners timely filed a joint U.S. income tax return for 1998 (U.S. return).  On their U.S. return, petitioners reported taxable income of $2,099,121 and precredit U.S. tax of $602,237.  Petitioners claimed a foreign tax credit of $750,387, based upon the taxes paid by Mr. Price to Canada, and they reported total U.S. tax after this credit of zero.  Petitioners also reported alternative minimum tax of zero.

Petitioners attached to their U.S. return a Form 6251, Alternative Minimum Tax--Individuals.  On their Form 6251, petitioners reported precredit tentative alternative minimum tax pursuant to section 55(b)(1)(A) of $501,999, an alternative minimum tax foreign tax credit of $451,799, and alternative minimum tax of $50,200.  At the top of Form 6251 appear the handwritten words "Treaty Override see [Form] 8833".

Petitioners also attached to their U.S. return two Forms 8833, Treaty-Based Return Position Disclosure Under Section 6114 or 7701(b).  On one of the Forms 8833, petitioners asserted that section 59 is overruled or modified by article XXIV of the U.S.-Canada treaty.  They set forth the following explanation of their position:

> The Taxpayer is taking the position that paragraph 1 of Article XXIV was enacted to eliminate double taxation of citizens of the U.S. and that Paragraphs 1, 4, 5 and 6 of Article XXIV override U.S. Domestic tax law. Therefore the foreign tax credit to be allowed by the U.S. under the Canada-U.S. Tax Convention should not be affected by the 90% limitation in the U.S. AMT Rules.

Respondent concedes that this Form 8833 disclosed petitioners' position, that a treaty of the United States overrules or modifies an internal revenue law, as required by section 6114.

Respondent mailed a notice of deficiency to petitioners with respect to their U.S. return. In that notice, respondent determined that petitioners' alternative minimum tax for 1998 is $50,200. Respondent determined that petitioners' precredit alternative minimum tax was $501,999, and that their alternative minimum tax foreign tax credit was limited to $451,799, or 90 percent, of that precredit amount. In effect, respondent determined that petitioners' alternative minimum tax foreign tax credit for 1998 is subject to limitation under section 59(a)(2), contrary to the position set forth by petitioners on their Form 8833.

This case requires us to examine section 59(a)(2) and the provisions of the U.S.-Canada treaty dealing with the elimination of double taxation. We must determine whether

the statute and the treaty can be harmoniously applied or whether the provisions of the treaty override the provisions of the statute, as petitioners contend.

In interpreting a treaty and a statute that pertain to the same subject matter, the general rule is that the provisions of both should be construed to be in harmony. Whitney v. Robertson, 124 U.S. 190, 194 (1888); see also The Cherokee Tobacco, 78 U.S. 616 (1870); Samann v. Commissioner, 313 F.2d 461, 463 (4th Cir. 1963), affg. 36 T.C. 1011 (1961); Am. Trust Co. v. Smyth, 247 F.2d 149, 152-153 (9th Cir. 1957). However, if the provisions of one conflict with those of the other, then the one adopted last in time generally prevails. See Chae Chan Ping v. United States, 130 U.S. 581, 600 (1889); Whitney v. Robertson, supra at 194; Pekar v. Commissioner, 113 T.C. 158 (1999); Lindsey v. Commissioner, 98 T.C. 672 (1992), affd. without published opinion 15 F.3d 1160 (D.C. Cir. 1994). As the Supreme Court explained in Whitney v. Robertson, supra at 194:

> By the Constitution a treaty is placed on the
> same footing, and made of like obligation, with
> an act of legislation. Both are declared by that
> instrument to be the supreme law of the land, and
> no superior efficacy is given to either over the
> other. When the two relate to the same subject,
> the courts will always endeavor to construe them
> so as to give effect to both, if that can be done
> without violating the language of either; but if

the two are inconsistent, the one last in date will control the other, provided always the stipulation of the treaty on the subject is self-executing. * * *

The U.S.-Canada treaty, as amended by the First and Second Protocols, entered into force on August 16, 1984. Paragraph 1 of article XXIV provides the general rule as follows:

1.  In the case of the United States, subject to the provisions of paragraphs 4, 5, and 6, double taxation shall be avoided as follows: In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), the United States shall allow to a citizen or resident of the United States, or to a company electing to be treated as a domestic corporation, as a credit against the United States tax on income the appropriate amount of income tax paid or accrued to Canada * * *

Paragraph 4 of article XXIV provides the following rule applicable to U.S. citizens who are residents in Canada:

4.  Where a United States citizen is a resident of Canada, the following rules shall apply:

(a)  Canada shall allow a deduction from the Canadian tax in respect of income tax paid or accrued to the United States in respect of profits, income or gains which arise (within the meaning of paragraph 3) in the United States, except that such deduction need not exceed the amount of the tax that would be paid to the United States if the resident were not a United States citizen; and

(b) For the purposes of computing the United States tax, the United States shall allow as a credit against United States tax the income tax paid or accrued to Canada after the deduction referred to in subparagraph (a). The credit so allowed shall not reduce that portion of the United States tax that is deductible from Canadian tax in accordance with subparagraph (a).

In 1986, Congress revamped the alternative minimum tax imposed on noncorporate taxpayers. See Tax Reform Act of 1986 (TRA), Pub. L. 99-514, sec. 701(a), 100 Stat. 2085, 2320. As amended at that time, former section 55(a) imposed an alternative minimum tax on noncorporate taxpayers equal to the excess of the "tentative minimum tax" over the "regular tax". The term "regular tax" was defined to mean "the regular tax liability for the taxable year (as defined in sec. 26(b)) reduced by the foreign tax credit allowable under section 27(a)". Sec. 55(c)(1). Former section 55(b) defined "tentative minimum tax" as an amount equal to 21 percent of so much of the "alternative minimum taxable income" for the taxable year as exceeded the "exemption amount", reduced by the "alternative minimum tax foreign tax credit" for the year. Former section 59(a)(1) defined "alternative minimum tax foreign tax credit" as the foreign tax credit allowed by section 27, with certain adjustments that we need not detail here, and former section 59(a)(2)(A), the predecessor of the

provision at issue in this case, limited the credit to 90 percent of the precredit tentative minimum tax liability. Therefore, no more than 90 percent of the alternative minimum tax could be offset under former section 59(a)(1).

With changes that are not material to this case, the alternative minimum tax provisions, as amended by TRA, apply to the taxable year in issue. The current version of section 59(a)(2)(A), the provision at issue, provides as follows:

> (2) Limitation to 90 percent of tax.--
>
>     (A) In general.--The alternative minimum tax foreign tax credit for any taxable year shall not exceed the excess (if any) of--
>
>         (i) the pre-credit tentative minimum tax for the taxable year, over
>
>         (ii) 10 percent of the amount which would be the pre-credit tentative minimum tax without regard to the alterative tax net operating loss deduction and section 57(a)(2)(E).

In 1988, during its consideration of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, 102 Stat. 3342, Congress reviewed the relationship of the Internal Revenue Code and treaties. As originally enacted in 1954, former section 7852(d) had provided that no provision of the Internal Revenue Code was to apply in any case where its application would be contrary to any treaty

obligation of the United States in effect on the date of enactment of the 1954 Code.  See S. Rept. 100-445, at 316-328 (1988).  More recently, Congress had specifically provided from time to time that it intended certain amendments of the Internal Revenue Code to prevail over treaties in case of a conflict.  Id.

In TAMRA, Congress amended section 7852(d) to provide that neither a provision of a treaty nor a law of the United States affecting revenue shall have preferential status by reason of its being a treaty or a law.  TAMRA sec. 1012(aa)(1), 102 Stat. 3531.  Congress intended this change to place treaties and revenue statutes on the same footing, so that conflicts in their provisions would be resolved under the rule that the provision adopted later in time controls.  S. Rept. 100-445, supra at 321-322.  Congress also intended this change to codify the approach of the courts under which the same canons of construction applied to the interaction of two statutes enacted at different times would be applied to the interaction of revenue statutes and treaties enacted and entered into at different times.  Id. at 321.

In addition to amending section 7852(d), Congress enacted the following provision as section 1012(aa)(2) of TAMRA:

(2) Certain amendments to apply notwithstanding treaties.--The following amendments made by the Reform Act [viz, TRA] shall apply notwithstanding any treaty obligation of the United States in effect on the date of the enactment of the Reform Act:

(A) The amendments made by section 1201 of the Reform Act.

(B) The amendments made by title VII of the Reform Act to the extent such amendments relate to the alternative minimum tax foreign tax credit.

Thus, Congress specifically codified the later-in-time rule with respect to section 59(a)(2). See S. Rept. 100-445, supra at 319.

The Third Protocol, signed on March 17, 1995, which entered into force on November 9, 1995, made changes to article XXIV affecting credits for Social Security tax, corporate tax exemptions, and the tax treatment of dividends, interest, and royalties. Third Protocol, art. 12. These amendments did not alter the general rule of article XXIV found in paragraph 1, as stated above. Id.; U.S.-Canada treaty, art. XXIV, par. 1. Significantly, article 1 of the Third Protocol amended paragraph 2 of article II of the U.S.-Canada treaty, setting forth the taxes covered by the U.S.-Canada treaty. That paragraph was amended to read as follows:

2.  Notwithstanding paragraph 1, the taxes
existing on March 17, 1995 to which the
Convention shall apply are:

*   *   *   *   *   *   *

(b) In the case of the United States, the
Federal income taxes imposed by the Internal
Revenue Code of 1986. * * *

Thus, the Third Protocol makes specific reference to the Internal Revenue Code of 1986, the Code as renamed by TRA. TRA sec. 2(a), 100 Stat. 2095.

The Fourth Protocol was signed on July 29, 1997, and entered into force on December 16, 1997.  The Fourth Protocol made no modifications to article XXIV of the U.S.-Canada treaty.  There is no mention in the Third or the Fourth Protocol of the enactment of section 59 by TRA, or the enactment of section 1012(aa)(2) of TAMRA.

Petitioners contend that a conflict exists between section 59(a)(2) and article XXIV of the U.S.-Canada treaty, and that article XXIV of the U.S.-Canada treaty, which is the later expression of the sovereign will of the United States by reason of the entry into force of the Third and Fourth Protocols, precludes the application of section 59(a)(2) to them.  Petitioners contend that, as a result, their alternative minimum tax foreign tax credit cannot be reduced by the limitation set forth in section 59(a)(2).

In support of their position that the application of section 59(a)(2) conflicts with the provisions of article XXIV, petitioners make three arguments.  First, petitioners point out that paragraph 1 of article XXIV provides that the treaty is "subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof)".  Petitioners argue that section 59(a)(2) is not only adverse to the principle of the elimination of double taxation but "repudiates" that principle in that it "subjects a certain portion of a U.S. taxpayer's income to double taxation".  Thus, they argue that section 59(a)(2) is not an amendment of U.S. law that is compatible with article XXIV of the treaty dealing with the elimination of double taxation.

Second, they argue that section 59(a)(2) cannot be harmonized with paragraphs 4, 5, and 6 of article XXIV, and that the entire paragraph 1 is "subject to the provisions of paragraphs 4, 5, and 6".  According to petitioners, paragraphs 4, 5, and 6 of article XXIV provide, in substance, that the United States and Canada have agreed to a method for allocating a U.S. citizen's tax liabilities between the two countries in the case of a U.S. citizen who resides in Canada.  In making that allocation, petitioners argue, the United States has agreed that a U.S. citizen

residing in Canada need not pay U.S. income tax greater than the amount that would have been paid by a taxpayer who is not a U.S. citizen.  Petitioners argue that this means that since they had no U.S.-source income in 1998, they would not have been subject to alternative minimum tax if they were not U.S. citizens.  Therefore, petitioners argue, the section 59(a)(2) limitation is not applicable to them by reason of the provisions of article XXIV.

Finally, petitioners argue that this Court "has previously determined that a conflict exists between section 59(a)(2) and the U.S.-Canada treaty" in Jamieson v. Commissioner, T.C. Memo. 1995-550, affd. without published opinion 132 F.3d 1481 (D.C. Cir. 1997).

In support of their position that the treaty is the last expression of the sovereign will of the United States, petitioners rely on the fact that "the ratification of the Third and Fourth Protocols in 1995 and 1997, [took place] some nine and eleven years following the enactment of section 59(a)(2)."  Petitioners argue that treaty protocols are the last expression of sovereign will of the contracting parties even if the relevant treaty provision is not amended.  Moreover, petitioners point out that the amendments made by articles 1, 3, and 12 of the Third Protocol did affect the provisions at issue in this case,

paragraphs 1 and 4 of article XXIV of the U.S.-Canada treaty.

Recently, in Kappus v. Commissioner, T.C. Memo. 2002-36, we decided the very issue presented in the instant case.  The taxpayers in that case made virtually the same argument as petitioners.  We pointed out that in order for the taxpayers to prevail, we would have to find both that section 59(a)(2) and article XXIV of the treaty are in conflict and that the U.S.-Canada treaty is later in time. We pointed out:

> If the treaty and section 59(a)(2) are not in conflict, then effect must be given to the provisions of both without regard to which of the two is later in time.  Pekar v. Commissioner, * * * [113 T.C. 158, 161 (1999)].  In that event, we must find that petitioners are subject to section 59(a)(2).  On the other hand, if there is a conflict between the two, and if section 59(a)(2), as opposed to the treaty, is found to be later in time, then section 59(a)(2) controls as the last expression of the sovereign will. Jamieson v. Commissioner, T.C. Memo. 1995-550, affd. without published opinion 132 F.3d 1481 (D.C. Cir. 1997).

In Kappus, we disagreed with the taxpayers' position that there is a conflict between section 59(a)(2) and article XXIV of the U.S.-Canada treaty, and we agreed with the Commissioner that section 59(a)(2) and the provisions of article XXIV of the U.S.-Canada treaty can be applied

harmoniously.  We addressed the taxpayers' argument as follows:

> Petitioners' argument misses the mark. Petitioners urge us to find a conflict between section 59(a)(2) and Article XXIV of the treaty based upon the Third and Fourth Protocols, but they fail to address the effect of the enactment of section 1012(aa)(2) of TAMRA.  As discussed above in section 1012(aa)(2) of TAMRA, Congress provided that section 701 of the Tax Reform Act of 1986, including section 59(a)(2), would apply "notwithstanding any treaty obligation of the United States in effect on the date of the enactment of the Reform Act".  The Third and Fourth Protocols on which petitioners rely, became effective after Congress enacted section 59(a)(2) of the Code and section 1012(aa)(2) of TAMRA.  Neither of the later protocols mentions the limitation of the alternative minimum tax foreign tax credit imposed by section 59(a)(2) or section 1012(aa)(2) of TAMRA.  Thus, neither the Third or Fourth Protocol contains a clearly expressed intent to supercede section 59(a)(2).
>
> To the contrary, the language of the Third Protocol comtemplates that the U.S.-Canada treaty accepted the changes to U.S. revenue laws that were made by the Tax Reform Act of 1986, including the enactment of section 59(a)(2). As noted above, article 1 of the Third Protocol expressly provides that the taxes existing on March 17, 1995, to which the treaty applies, in the case of the United States, are "the Federal income taxes imposed by the Internal Revenue Code of 1986." [TRA sec. 2(a) redesignated the Internal Revenue Code of 1954 the "Internal Revenue Code of 1986".]  It was also the statute that substantially revised the alternative minimum tax on noncorporate taxpayers and enacted the predecessor of section 59(a)(2).  Tax Reform Act of 1986, sec. 701, 100 Stat. 2320.  Section 1012(aa)(2) of TAMRA which codified the last in time rule with respect to the revision of the alternative minimum tax rules was enacted as a technical amendment to the Tax Reform Act of 1986 and was made effective as if it had been included

therein. TAMRA sec. 1012 (aa)(4), 102 Stat. 3532. Thus, the Third Protocol specifically takes into account, as the taxes to which the convention shall apply, the alternative minimum tax as amended by the Tax Reform Act of 1986, including the limitation on the alternative minimum tax foreign tax credit imposed by section 59(a)(2). Accordingly, we find that there is harmony between provisions of the U.S.-Canada treaty and section 59. <u>Pekar v. Commissioner</u>, <u>supra</u> at 163; <u>Brooke v. Commissioner</u>, T.C. Memo. 2000-194 [affd. 13 Fed. Appx. 7 (D.C. Cir. 2001)].

For the reasons set forth in our opinion in <u>Kappus v. Commissioner</u>, <u>supra</u>, we reject petitioners' position that there is conflict between the provisions of the U.S.-Canada treaty and section 59, and we find that petitioners are subject to section 59(a)(2).

On the basis of the foregoing,

<u>Decision will be entered for respondent</u>.