ROBERT V. LINDSEY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9529-90.        Filed June 23, 1992.

*Lawrence Paul Meyers,* for petitioner.
*Alan Beinhorn,* for respondent.

OPINION

NIMS, *Judge:* This case was assigned to and heard by Special Trial Judge Stanley J. Goldberg pursuant to the provisions of section 7443A and Rules 180, 181, and 183. Unless otherwise indicated, section references are to the Internal Revenue Code as in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure. The Court agrees with and adopts the Special Trial Judge's opinion, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

GOLDBERG, *Special Trial Judge:* Respondent determined a deficiency in petitioner's Federal income tax for the year 1988 in the amount of $916. The issue for decision is whether the United States-Swiss Confederation Income Tax Convention, May 24, 1951, 2 U.S.T. (Part 2) 1751 (the treaty), overrides the application of section 59(a)(2), which limits the availability of the alternative minimum tax foreign tax credit otherwise available under section 59(a)(1).

This case was submitted fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner is a U.S. citizen who resided in Geneva, Switzerland, when he filed his petition.

For the year 1988, petitioner timely filed Form 1040, and claimed the status of married filing separately. He has lived and worked in Geneva, Switzerland, since 1949. Presently retired, petitioner worked for the International Telecommunication Union, now a specialized agency of the United Nations,

and received only foreign source income. Petitioner's income consisted of his $62,355 pension and $1,264 of interest, all taxable in Switzerland. He paid the equivalent of $24,831 in Swiss cantonal and municipal taxes.

Petitioner reported a liability of $14,732 on his Federal income tax return before the application of the foreign tax credit. Petitioner claimed a foreign tax credit of $14,732, thereby offsetting his entire Federal income tax liability.

Respondent determined a deficiency of $916 on the following basis: petitioner has an alternative minimum tax liability of $9,156; for purposes of the alternative minimum tax liability, section 59(a)(2) limits the amount of the alternative minimum tax foreign tax credit under section 59(a) which may be used to offset petitioner's alternative minimum tax liability to only 90 percent of such liability.

Petitioner argues that the imposition of the alternative minimum tax constitutes double taxation and thus violates Article XV(1)(a) of the treaty. This article provides in part that while the United States may determine taxable income of its citizens domiciled in Switzerland under its revenue laws, nevertheless—

The United States shall, however, subject to the provisions of section 131, Internal Revenue Code, as in effect on the date of the entry into force of this Convention, deduct from its taxes the amount of Swiss taxes specified in Article I of this Convention. [2 U.S.T. (Part 2) at 1759-1760.]

Petitioner points out that section 131 of the Internal Revenue Code of 1939 permits, with certain limitations not here relevant, the crediting against the taxpayer's United States income tax liability the amount of any income taxes paid or accrued during the taxable year to a foreign country. In conjunction with the foregoing, petitioner concludes that the provision of the treaty forbidding double taxation of income should override the provisions of section 59(a)(2) (added to the current Internal Revenue Code by section 701(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2336-2337), which limits the availability of the alternative minimum tax foreign tax credit in the manner described above.

We must resolve this conflict between the provision of the treaty, which proscribes the double taxation of income, and section 59(a)(2), which limits the availability of the alternative minimum tax foreign tax credit. For the reasons that follow,

we conclude that the treaty must yield to the application of section 59(a)(2).

Section 55(a) imposes an alternative minimum tax on noncorporate taxpayers. The determination of an individual's alternative minimum tax requires a recomputation of the taxable income leading to a new tax base, the alternative minimum taxable income. Sec. 55(b)(2). Section 59(a)(1) provides for an alternative minimum tax foreign tax credit, a credit against U.S. income tax liability for tax paid to a foreign government. Section 59(a)(2) provides, in relevant part, that the alternative minimum tax foreign tax credit shall not exceed 90 percent of the tentative minimum tax liability calculated under section 55(b)(1)(A). In other words, no more than 90 percent of the alternative minimum tax may be offset by the alternative minimum tax foreign tax credit available under section 59(a)(1).

The legislative history of section 59(a)(2) gives the rationale for this section. The Senate report states:

The committee believes that the minimum tax should serve one overriding objective: to ensure that no taxpayer with substantial economic income can avoid significant tax liability by using exclusions, deductions, and credits. * * * [S. Rept. 99-313, at 518 (1986), 1986-3 C.B. (Vol. 3) 518.]

The Senate report goes on to explain that:

A * * * further change that the committee believes is necessary relates to the use of foreign tax credits by U.S. taxpayers to avoid all U.S. tax liability. Absent a special rule, a U.S. taxpayer with substantial economic income would be able to avoid all U.S. tax liability so long as all of its income was foreign source income and it paid foreign tax at the U.S. regular tax rate or above. While allowance of the foreign tax credit for minimum tax purposes generally is appropriate, the committee believes that taxpayers should not be permitted to use the credit to avoid *all* minimum tax liability. U.S. taxpayers generally derive benefits from the protection and applicability of U.S. law, and in some cases from services (such as defense) provided by the U.S. Government, even if all of such taxpayers' income is earned abroad. Thus, it is fair to require at least a nominal tax contribution from all U.S. taxpayers with substantial economic incomes. [S. Rept. 99-313, at 520 (1986), 1986-3 C.B. (Vol. 3) 520.]

Section 7852(d), dealing with treaty obligations, provides:

SEC. 7852(d). TREATY OBLIGATIONS.—
  (1) IN GENERAL.—For purposes of determining the relationship between a provision of a treaty and any law of the United States affecting revenue,

neither the treaty nor the law shall have preferential status by reason of its being a treaty or law.

(2) SAVINGS CLAUSE FOR 1954 TREATIES.—No provision of this title (as in effect without regard to any amendment thereto enacted after August 16, 1954) shall apply in any case where its application would be contrary to any treaty obligation of the United States in effect on August 16, 1954.

Section 7852(d)(1) reiterates the principle of the Supremacy Clause of the Constitution, Article VI, section 2: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the authority of the United States, shall be the supreme Law of the Land". The Supreme Court has interpreted this statement to mean that treaties do not enjoy a status superior to acts of Congress:

so far as a treaty made by the United States with any foreign nation can become the subject of judicial cognizance in the courts of this country, it is subject to such acts as Congress may pass for its enforcement, modification, or repeal. [*Edye v. Robertson* (Head Money Cases), 112 U.S. 580, 599 (1884).]

The principle has long been established that when a treaty and an act of Congress conflict "the last expression of the sovereign will must control". *Chae Chan Ping v. United States* (Chinese Exclusion Case), 130 U.S. 581, 600 (1889); *Whitney v. Robertson,* 124 U.S. 190, 194 (1888); *United States v. Felter,* 546 F. Supp. 1002 (D. Utah 1982), affd. 752 F.2d 1505 (10th Cir. 1985). Section 7852(d)(2), in turn, is a transition rule governing the relationship between treaties and Code provisions. This provision was enacted by section 1012(aa)(1)(A) of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, 102 Stat. 3342, 3531.

The relevant legislative history states that "treaty provisions that were in effect in 1954 and that conflict with the 1954 Code as originally enacted are to prevail over then-existing Code provisions *but not over later amendments to the Code*". S. Rept. 100-445, at 318 (1988) (emphasis added). (Prior to amendment by TAMRA, section 7852(d) provided: "No provision of this title shall apply in any case where its application would be contrary to any treaty obligation of the United States in effect on the date of the enactment of this title.")

In TAMRA, Congress specifically addressed the conflict between the 90-percent limitation on the alternative minimum

tax foreign tax credit under section 59(a)(2) and prior tax treaties. Section 1012(aa)(2)(B) of TAMRA provides:

(2) CERTAIN AMENDMENTS TO APPLY NOTWITHSTANDING TREATIES.—The following amendments made by the Reform Act shall apply notwithstanding any treaty obligation of the United States in effect on the date of the enactment of the Reform Act:

\* \* \* \* \* \* \*

(B) The amendments made by title VII of the Reform Act to the extent such amendments relate to the alternative minimum tax foreign tax credit. [TAMRA, 102 Stat. 3531.]

Section 1012(aa)(3) of TAMRA provides that certain amendments of TAMRA shall not apply to the extent they are inconsistent with treaties. None of the enumerated amendments, however, are relevant to the present case.

Congress explained section 1012(aa)(2)(B) as follows:

The bill codifies application of the later-in-time rule with respect to the following provisions of the 1986 Act, notwithstanding any treaty provision in effect on the date of enactment of the 1986 Act (October 22, 1986): section 1201 of the Act, amending the foreign tax credit limitation, and *section 701 of the Act (as it relates to the limitation on the use of foreign tax credits against minimum tax liability).* [S. Rept. 100-445, at 319; emphasis added.]

In short, Congress has dealt directly with the conflict presently before us, requiring that in the context of a treaty conflict with the 90-percent limitation on the availability of the alternative minimum tax foreign tax credit under section 59(a)(2), the later-in-time rule shall prevail. Here, section 59(a)(2) is the last expression of the sovereign will. We therefore hold that notwithstanding the treaty, petitioner is subject to the limitations under section 59(a)(2).

To reflect the foregoing,

*Decision will be entered for respondent.*