113 T.C. No. 12


UNITED STATES TAX COURT


PAUL J. PEKAR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15289-97.              Filed September 1, 1999.


P, a U.S. citizen, resided in Germany and the
United Kingdom during his 1995 tax year.  He paid
resident income tax to the foreign countries in an
amount exceeding his reported U.S. income tax
liability.  P claimed a foreign tax credit that reduced
his U.S. income tax to zero.  P did not compute or
report liability for the alternative minimum tax (AMT)
under sec. 55, I.R.C., or the foreign tax credit
limitations under sec. 59, I.R.C.  P claimed that the
sec. 59, I.R.C., limit on foreign tax credits violated
the double taxation prohibitions of the U.S. income tax
treaties with Germany and the United Kingdom.
    <u>Held</u>:  The U.S.-Germany treaty and the U.S.-United
Kingdom treaty interpreted--P is not entitled to relief
from the AMT under either treaty.  <u>Held</u>, <u>further</u>, the
U.S.-Germany treaty recognizes and does not prohibit
the sec. 59, I.R.C., limit as double taxation.  <u>Held</u>,
<u>further</u>, even if the U.S.-United Kingdom treaty
conflicts with sec. 59, I.R.C., because of the
established last-in-time rule, the sec. 59, I.R.C.,

limitation on the foreign tax credit trumps any
conflicting provision in the treaty because the Code
section was subsequently promulgated.


Paul J. Pekar, pro se.

Wendy L. Wojewodzki, for respondent.


GERBER, Judge:  Respondent determined a deficiency in
petitioner's 1995 Federal income tax of $3,893, a penalty
pursuant to section 6662(a)[1] of $778.60, and a late-filing
addition to tax pursuant to section 6651(a)(1) of $194.65.  The
primary issues for our consideration are whether petitioner was
subject to the alternative minimum tax (AMT) and whether he was
negligent when he failed to calculate and/or report the AMT on
his 1995 Federal income tax return.  Petitioner also challenges
the late-filing addition to tax determined by respondent.

FINDINGS OF FACT

The stipulation of facts and the exhibits attached thereto
are incorporated herein by this reference.

At the time his petition was filed, petitioner was a U.S.
citizen residing in Hamburg, Germany.  Petitioner emigrated to
Germany in 1970, establishing a permanent residence in Berlin.

---

[1] Unless otherwise stated, all section references are to the
Internal Revenue Code in effect for the taxable year in issue,
and all Rule references are to the Tax Court Rules of Practice
and Procedure.

Over the years, he worked in Europe and the Middle East, residing at job locations. In 1995, petitioner lived and worked in the United Kingdom and in Germany. While in Germany, petitioner was the chief financial officer for Conoco.

During his absence from the United States, petitioner paid income tax to his respective resident countries and continued to report his income to the Internal Revenue Service (IRS). However, petitioner did not report that he was subject to the AMT. Respondent audited petitioner's 1991 return and determined that petitioner had failed to report or pay the AMT. During January 1995, petitioner conceded the 1991 AMT issue, which he had disputed in a petition to this Court. In that proceeding, we entered the parties' stipulated decision. At the time he filed his 1995 return, petitioner had agreed that he owed the AMT for 1991 but he chose not to report AMT liability for 1995.

In 1995, petitioner reported $253,077 gross income and $169,275 adjusted gross income. He claimed a $5,750 standard deduction in a head of household filing status, personal exemptions for himself and his sons totaling $7,926, a foreign earned income exclusion of $70,000, and a housing exclusion of $15,474. He reported $155,599 taxable income and $42,991 tax. Stating that he had lived in and paid resident income taxes to Germany and the United Kingdom for the entire tax year,

petitioner reduced his U.S. tax liability to zero by applying a $42,991 foreign tax credit.

Respondent examined petitioner's 1995 return and determined that petitioner had negligently failed to report that he owed the AMT. Respondent determined that petitioner owed $3,893 in AMT after allowing a foreign tax credit, as permitted by section 59. Respondent also determined a $778.60 penalty for negligence for failing to report and pay the AMT and that petitioner was liable for a $194.65 late filing addition to tax because his return was received and filed after the required date.

OPINION

Alternative Minimum Tax

As a nonresident U.S. citizen, petitioner was required to file Federal income tax returns and report his worldwide income. See sec. 6012; sec. 1.6012-1(a)(1)(i), Income Tax Regs. He was entitled to claim a foreign tax credit each year for income tax paid to foreign jurisdictions. See secs. 27(a), 901. Using these foreign tax credits, petitioner reduced his regular Federal income tax liability to zero. He did not report, however, any liability for the section 55 AMT.

Section 55(a) imposes an AMT on noncorporate taxpayers equal to the excess of the "tentative minimum tax" over the "regular

tax"[2] for the taxable year.  That excess amount is paid in addition to any regular tax owed.  The AMT is intended to prevent a taxpayer with substantial income from avoiding significant tax liability through the use of exemptions, deductions, and credits. See Urbanek v. United States, 866 F. Supp. 1414 (S.D. Fla. 1994), affd. per curiam 71 F.3d 855 (11th Cir. 1996); S. Rept. 99-313, at 518 (1986), 1986-3 C.B. (Vol. 3) 1, 518.

Noncorporate taxpayers may reduce their tentative minimum tax by the foreign tax credit.  See sec. 55(b)(1)(A).  However, that foreign tax credit is limited by section 59(a)(2)(A).[3]  The

---

[2] The term "regular tax" means "the regular tax liability for the taxable year (as defined in section 26(b)) reduced by the foreign tax credit allowable under section 27(a)".  Sec. 55(c)(1).

[3] The rationale underlying the foreign tax credit limitation was explained in a Senate report as follows:

"A further change that the committee believes is necessary relates to the use of foreign tax credits by U.S. taxpayers to avoid all U.S. tax liability.  Absent a special rule, a U.S. taxpayer with substantial economic income would be able to avoid all U.S. tax liability so long as all of its income was foreign source income and it paid foreign tax at the U.S. regular tax rate or above.  While allowance of the foreign tax credit for minimum tax purposes generally is appropriate, the committee believes that taxpayers should not be permitted to use the credit to avoid all minimum tax liability.  U.S. taxpayers generally derive benefits from the protection and applicability of U.S. law, and in some cases from services (such as defense) provided by the U.S. Government, even if all of such taxpayers' income is earned abroad.  Thus, it is fair to require at least a nominal tax contribution from all

(continued...)

foreign tax credit cannot offset more than 90 percent of the tentative minimum tax figured. See id. Petitioner's allowable foreign tax credit is 90 percent of $38,927, or $35,034. Therefore, his AMT, the tentative minimum tax minus the foreign tax credit, is $3,893. Because he had no regular tax due, he owes $3,893.[4]

Application of the Treaties

In his challenge of the deficiency determined by respondent, petitioner does not question respondent's calculation of the AMT. Instead, he labels as "unfair" the AMT as applied to American citizens like himself who live permanently outside the United States. At trial, petitioner referenced the double taxation protection given to expatriates by our tax treaties with the United Kingdom and Germany. See Convention for the Avoidance of Double Taxation, and Three Protocols, Dec. 31, 1975-Mar. 15,

---

[3](...continued)
U.S. taxpayers with substantial economic incomes."
[Lindsey v. Commissioner, 98 T.C. 672, 675 (1992)
(quoting S. Rept. 99-313, at 520 (1986), 1986-3 C.B.
(Vol. 3), 1, 520), affd. without published opinion 15
F.3d 1160 (D.C. Cir. 1994); some emphasis added.]

[4] Petitioner reported $42,991 of regular tax and claimed an equal amount of foreign tax credit unreduced by the AMT limitations. The amount of the limitation on the credit is based on the AMT and not on the $42,991 of tax reported by petitioner before he claimed the credit. Respondent's computation of the amount of the AMT, limitations on the foreign tax credit, and the resulting AMT liability are set forth in the appendix.

1979, U.S.-U.K., art. 23, 31 U.S.T. 5668, 5685 (hereinafter U.S.-U.K. treaty); Convention for the Avoidance of Double Taxation, Aug. 29, 1989, U.S.-Germany, art. 23, 30 I.L.M. 1778, 1779 (hereinafter U.S.-Germany treaty). Because petitioner contends that the AMT was "outside the double taxation agreements" of the treaties, we interpret his argument to be that the AMT and the resulting limitation on the credit violate the treaties and therefore cannot be applied.[5]

If there is a conflict between a Code provision and a treaty provision, the "last-in-time" provision will trump the earlier provision. See Lindsey v. Commissioner, 98 T.C. 672 (1992), affd. without published opinion 15 F.3d 1160 (D.C. Cir. 1994); Jamieson v. Commissioner, T.C. Memo. 1995-550, affd. without published opinion 132 F.3d 1481 (D.C. Cir. 1997). However, if there is no conflict between the two, then the Code and the treaty should be read harmoniously, to give effect to each. See

---

[5] We note that respondent never questioned petitioner's failure to disclose this treaty-based return position as required by sec. 6114. Unless excepted by regulations, each U.S. taxpayer who takes a position that a treaty of the United States overrules any provision of the Internal Revenue Code and effects a reduction of any tax must disclose that position on either a Form 8833 or a separate attached statement. See sec. 6114(a); sec. 301.6114-1(a), Proced. & Admin. Regs. (treaty-based return position). A taxpayer who fails in a material way to disclose one or more positions taken for a taxable year is subject to a separate penalty for each failure to disclose a position. See sec. 301.6712-1, Proced. & Admin. Regs. (failure to disclose a treaty-based return position). However, there is no indication that this failure estops a taxpayer from taking such a position.

<u>Xerox Corp. v. United States</u>, 41 F.3d 647, 658 (Fed. Cir. 1994).
Accordingly, we proceed to consider the relationship between
section 59 and the double taxation prohibitions found in each of
the two treaties, the U.S.-U.K. treaty and the U.S.-Germany
treaty.

A. <u>U.S.-U.K. Treaty</u>

Article 23 of the U.S.-U.K. treaty generally prohibits
double taxation and provides to U.S. residents and citizens a
credit against their U.S. income tax in an "appropriate amount".
U.S.-U.K. treaty, art. 23(1). An "appropriate amount" is defined
as that amount of tax paid to the United Kingdom, not to exceed
the limitations provided by U.S. law for that taxable year. <u>Id.</u>
One of the limitations for the 1995 taxable year was the foreign
tax credit limitation of section 59. Therefore, the U.S.-U.K.
treaty provides for the imposition of the tax credit limit, and
the treaty and the Code may be harmonized and the limit applied
to petitioner.

Even if one were to argue that the U.S.-U.K. treaty
provision for "limits of law for the taxable year" included only
those in effect when the treaty was adopted and that the Code and
the treaty conflicted, such a conflict does not work to
petitioner's advantage. If there is a conflict, the Code section
will supersede the treaty provision because of the "last-in-time"
rule. See <u>Lindsey v. Commissioner</u>, <u>supra</u>. Section 59 was added

to the Code by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 701(a), 100 Stat. 2336, 6 years after the U.S.-U.K. treaty became effective. Because the Code section was enacted after the treaty, the Code section would prevail if we were to find a conflict between the treaty and the Code, resulting in petitioner's liability for the tax.

B. <u>U.S.-Germany Treaty</u>

With language similar to that used in the U.S.-U.K. treaty, the double taxation provision of the U.S.-Germany treaty first recognizes that the treaty is subject to the existing limitations placed by U.S. law and then provides guidelines for the avoidance of double taxation by the two countries. See U.S.-Germany treaty, art. 23. Although we have interpreted the U.S.-U.K. treaty, the U.S.-Germany treaty has not previously been interpreted by this Court. The U.S.-Germany treaty provision details: (1) When and how the United States will provide foreign tax credits to its taxpayers to alleviate double taxation, (2) when and how Germany will provide similar relief to its citizens through the use of foreign tax credits and income exemptions, and (3) how to apply a special set of credit and income-sourcing rules for U.S. citizens resident in Germany receiving a certain type of income. See U.S.-Germany treaty, art. 23(1)-(3). The paragraphs pertinent to petitioner's circumstances are the first

and last because relief to German taxpayers is of no import to this controversy.

According to article 23(1), tax under the U.S.-Germany treaty "shall be determined * * * in accordance with the provisions and subject to the limitations of the law of the United States".  This section further provides that the United States will allow as a credit against U.S. tax, taxes paid or accrued to Germany by U.S. citizens or residents, subject to the limitations of U.S. law.  Under this general rule, there is harmony between the U.S.-Germany treaty and section 59 because section 59 had been enacted 5 years before the U.S.-Germany treaty became effective and, therefore, was one of the existing laws recognized as a limitation on the U.S.-Germany treaty in article 23(1).

The interaction of section 59 and the U.S.-Germany treaty provision was specifically recognized in the technical explanation to the U.S. Model Income Tax Treaty double taxation provision, after which the U.S.-Germany treaty provision is patterned.  The commentary states that "When the alternative minimum tax is due, the alternative minimum tax foreign credit generally is limited in accordance with U.S. law to 90 percent of alternative minimum tax liability."  Rhodes & Langer, 6 U.S. International Taxation and Tax Treaties, U.S. Model Income Tax

Treaty Technical Explanation (1996), Mod-4 sec. 1.23, at 4-84 (1997).

The treaty-based system of U.S. credits and German credits and exemptions has, in certain cases, been modified as described in paragraph 3 of article 23, where the unique position of U.S. citizens resident in Germany is addressed.  That paragragh provides that where a foreign tax credit is given by Germany for U.S. tax paid on U.S.-source income under article 23(2), the credit need not exceed the rate of tax provided for in the U.S.-Germany treaty, even if the United States actually taxes its citizen on that U.S.-source income at a rate higher than the treaty rate.  This can result in double taxation, because the taxpayer must pay the full U.S. tax, rather than the reduced treaty rate, and yet receives less than the full foreign tax credit from Germany.  See U.S. Treasury Department Technical Explanation of the Convention and Protocol Between the United States of America and the Federal Republic of Germany for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital and to Certain Other Taxes, 2 CCH Tax Treaties par. 3255, at 28,215.  Accordingly, a U.S. citizen resident in Germany is disadvantaged when compared to a non-U.S. citizen resident in Germany receiving the same U.S.-source income, because the non-U.S. citizen would receive full credit from Germany for the tax paid to the United States.

To mitigate this potential inequity, article 23(3)(b) provides special rules for the U.S. determination of the tax owed and the foreign tax credit. Furthermore, any excessive taxation that may result, even after these rules are applied, shall be avoided by treating a portion of the income in question as though its source was shifted from the United States to Germany so that further foreign tax credit may be given to the taxpayer by the United States. See U.S.-Germany treaty, art. 23(3)(c).

Petitioner is a U.S. citizen residing in Germany, and article 23(3)(c) provides for special measures to avoid potential double taxation of U.S. citizens. Article 23(3), however, is applicable only to U.S.-source income. Petitioner's income was foreign-earned, German-source income. Article 23(3) has no application to this income or to the tax owed by petitioner to either Germany or the United States.

Because we find harmony between the AMT limitation of the foreign tax credit in section 59 and article 23 of the U.S.-Germany treaty, both may be applied to petitioner. Petitioner is therefore subject to the AMT on that income he earned while in Germany.

Constitutionality of AMT

Petitioner cryptically questioned the constitutionality of the AMT provisions.[6] Petitioner did not specify how the AMT is unconstitutional beyond saying that nonresident Americans are treated differently from resident American citizens. We have already determined that the AMT Code sections and, specifically, the foreign tax credit limitation of section 59, are constitutional. See Keese v. Commissioner, T.C. Memo. 1995-417 (finding the AMT Code sections, including the foreign tax credit limitation, constitutional); Estate of Kearns v. Commissioner, 73 T.C. 1223 (1980); Buttke v. Commissioner, 72 T.C. 677 (1979), affd. per curiam 625 F.2d 202 (8th Cir. 1980); Kolom v. Commissioner, 71 T.C. 235 (1978), affd. 644 F.2d 1282 (9th Cir. 1981).

In another attempt to avoid the AMT, petitioner also characterized it as an unconstitutional poll tax. A poll tax is a tax of a given amount, levied upon every person in a jurisdiction's taxing power, without reference to the person's property, income, or ability to pay. Black's Law Dictionary 1159

---

[6] Petitioner chose not to explain his position on the question of constitutionality. He reasoned that it would be more appropriate to present his views to the Court of Appeals. We find this curious because the Court of Appeals to which petitioner would likely proceed has already affirmed our holdings on similar issues. See Lindsey v. Commissioner, 15 F.3d 1160 (D.C. Cir. 1994).

(6th ed. 1990). The AMT does not meet this definition. It is an income tax and is necessarily dependent on the amount of income the taxpayer receives. Moreover, by definition it is applicable only to certain taxpayers. Petitioner's characterization of the AMT as a poll tax is without substance.

Accordingly, respondent's determination of a $3,893 income tax deficiency attributable to the AMT for petitioner's 1995 taxable year is sustained.

Negligence Penalty

Petitioner attempts to justify his decision not to report or pay the AMT for 1995 on the ground that he had consistently acted in the same manner and had been the subject of only one audit by the Commissioner, where ultimately he agreed that he owed the AMT.

Because the IRS has not pursued this issue in every prior year, petitioner contends that the penalty should not apply because a full foreign tax credit had been allowed, and because petitioner was merely continuing an accepted practice. He argues that the Commissioner's failure to make adjustments in all but one of petitioner's prior years means that his failure to report the AMT has been tacitly sanctioned.

Petitioner's argument must fail because each taxable year stands on its own and must be separately considered. See United States v. Skelly Oil Co., 394 U.S. 678, 684 (1969). Respondent

is not bound in any given year to allow the same treatment permitted in a previous year. See Lerch v. Commissioner, 877 F.2d 624, 627 n.6 (7th Cir. 1989); Knights of Columbus Council No. 3660 v. United States, 783 F.2d 69 (7th Cir. 1986); Corrigan v. Commissioner, 155 F.2d 164 (6th Cir. 1946). Taxpayers have no right to continue a prior tax treatment that was wrong either on the law or under the facts. See Thomas v. Commissioner, 92 T.C. 206, 226-227 (1989). "The mere fact that petitioner may have obtained a windfall in prior years does not entitle [him] * * * to like treatment for the taxable year here in issue." Union Equity Coop. Exch. v. Commissioner, 58 T.C. 397, 408 (1972), affd. 481 F.2d 812 (10th Cir. 1973); see also Schaeffer v. Commissioner, T.C. Memo. 1994-227.

Petitioner also claims that the language on his tax forms did not clearly indicate to him that he should perform the computation to determine whether he would owe the AMT because the forms said only that a taxpayer "may" owe tax because of the AMT. We do not accept petitioner's forced interpretation of "may" as mitigation to respondent's negligence determination in this setting.

We find most persuasive the fact that petitioner had been audited and agreed that he owed the AMT for 1991. That concession occurred before petitioner's 1995 return filing. Petitioner also admitted that he had received training on the AMT

as it applied to Americans living abroad through a seminar and that he had engaged in many discussions with other American expatriates about the AMT. Petitioner's experience had given him a basic understanding of the AMT. He cannot reasonably claim that he did not know that he could be subject to the tax. Furthermore, as we noted in Jamieson v. Commissioner, T.C. Memo. 1995-550, Lindsey v. Commissioner, 98 T.C. 672 (1992), had been decided by our Court and affirmed by the Court of Appeals by the time petitioner filed his 1995 return. Therefore, petitioner was on notice that the AMT foreign tax credit claimed by him was calculated improperly. See Jamieson v. Commissioner, supra. Moreover, we note that petitioner failed to make any reference to the AMT or to disclose his views on his return.

We also consider petitioner's educational background in determining whether he acted reasonably under the circumstances. See Vick v. Commissioner, T.C. Memo. 1984-353. Petitioner was the chief financial officer for Conoco in Germany and had general economic and financial knowledge. Under these circumstances, we hold that petitioner acted negligently when he failed to calculate and report the AMT due on his 1995 return.

Late-Filing Addition

Individual Federal income tax returns are generally due on or before April 15 of the year following the close of the calendar year. See sec. 6072(a). However, there are exceptions

to this general rule, including an exception for U.S. citizens whose tax homes are outside the United States and Puerto Rico. See sec. 1.6081-5(a)(5), Income Tax Regs. An extension to file returns of citizens in foreign countries (up until the 15th day of the 6th month following close of the taxable year--June 15 in this case) will be granted for those U.S. citizens who have properly requested one. See sec. 1.6081-5(a), Income Tax Regs. To obtain an extension under section 1.6081-5, Income Tax Regs., taxpayers must attach a statement to their return showing eligibility for the extension. See sec. 1.6801-5(b), Income Tax Regs.

There is no evidence that petitioner had attached any such statement to the return in question. Respondent, however, did not question whether petitioner had properly requested an extension. Respondent's argument assumes the June 15 filing date to be correct and concludes that petitioner did not meet that deadline by mailing his return on June 15 from a foreign situs. Petitioner argues that as a nonresident citizen, his return due date was June 15 and that because he mailed his return on the due date, his return should be considered timely filed, thereby avoiding the late-filing addition.

Because of respondent's position, we assumed petitioner qualified for the extension. Even with a June 15 filing date, petitioner did not meet the due date by mailing his return on

June 15.  Section 7502(a) provides that, in certain circumstances, an untimely received return is deemed timely filed on the date of the U.S. Postal Service postmark on the envelope or the date a receipt is issued by the U.S. Postal Service for either certified or registered mail.  However, the timely mailing-timely filing rule of section 7502(a) does not apply to foreign postmarks.  It is well established that foreign postmarks do not effectively cause the filing date of a document to be the postmark date.  See Cespedes v. Commissioner, 33 T.C. 214 (1959); Madison v. Commissioner, 28 T.C. 1301 (1957); Electronic Automation Sys., Inc. v. Commissioner, T.C. Memo. 1976-270; sec. 301.7502-1(c)(ii), Proced. & Admin. Regs.  Accordingly, petitioner's mailing of his return did not come within the provisions of section 7502 and the filing of his return would have been untimely, even if the return had been mailed on the due date.

Petitioner also argued that he should not be liable for the late-filing addition because he was advised by tax professionals that a foreign postmark would effectively date his return as filed.  However, he presented no evidence that he received this advice before he mailed his 1995 return.  Nor did petitioner show that the advice was provided by anyone who was competent to render tax advice.  He was unable to show that he relied upon or that it was reasonable to rely upon that advice when he mailed

the return.  Accordingly, respondent's late-filing addition

determination is sustained.

Because of a concession by respondent,

                                    <u>Decision will be entered</u>

                            <u>under Rule 155.</u>

APPENDIX

The taxpayer's tentative minimum tax is computed as follows. The taxable income, as it is normally calculated, is recomputed to create a new tax base, the alternative minimum taxable income (AMTI).  See sec. 55(b)(2).  The normal taxable income is reduced by the adjustments provided for in sections 56 and 58 and increased by the amount of the items of tax preference described in section 57.  In petitioner's case, the only applicable adjustment from these sections is the disallowance of the standard deduction and the personal exemption.  See sec. 56(b)(1)(E).  Petitioner's regular taxable income was $155,599 and was increased by the previously allowed deduction of $5,750 and exemption of $7,926.  His AMTI was $169,275.

The AMTI is then reduced by the special AMT exemption allowed according to the taxpayer's status.  See sec. 55(d).  For taxpayers who are unmarried but not widowed, like petitioner, the exemption amount is $33,750.  See id.  However, the exemption amount is phased out if the AMTI exceeds a certain amount.  For unmarried, not widowed, individuals, 25 percent of income exceeding $112,500 is subtracted from the exemption amount.  See id.  Petitioner's AMTI exceeded $112,500 by $56,775.  Twenty-five percent of that is $14,194, so petitioner's $33,750 exemption is reduced to $19,556.

Once the AMTI is reduced by the correct exemption amount, AMTI tax rates are applied to the new AMTI to arrive at the tentative minimum tax. The rate is 26 percent of any amount up to $175,000. Petitioner's AMTI of $169,275 was reduced by $19,556, leaving $149,719 to be taxed. Twenty-six percent of that is $38,927.

The foreign tax credit is limited to 90 percent of the tentative minimum tax amount. Ninety percent of $38,927 is $35,034. After this amount is applied against the tentative minimum tax, the amount remaining and due from petitioner is $3,893.