T.C. Memo. 2002-36

UNITED STATES TAX COURT

TOM AND LOUISE KAPPUS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16512-99.                    Filed February 8, 2002.

<u>Frank Joseph O'Connell, Jr.</u>, for petitioners.

<u>Jennifer L. Nuding</u>, for respondent.

MEMORANDUM OPINION

GOLDBERG, <u>Special Trial Judge</u>:  Respondent determined a
deficiency in petitioners' Federal income tax in the amount of
$6,152 for the taxable year 1997.  Unless otherwise indicated,
section references are to the Internal Revenue Code in effect for
the year in issue, and all Rule references are to the Tax Court
Rules of Practice and Procedure.

The sole issue for decision is whether petitioners are subject to the limitations on the alternative minimum tax foreign tax credit under section 59(a)(2).[1]  Petitioners contend that the Convention Between the United States of America and Canada With Respect to Taxes on Income and on Capital (hereinafter U.S.-Canada treaty), Sept. 26, 1980, U.S.-Can., T.I.A.S. No. 11087 (as in effect during 1997), overrides the application of section 59(a)(2).

This case was submitted fully stipulated pursuant to Rule 122.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time of filing the petition, petitioners resided in Orangeville, Ontario, Canada.  Petitioners are husband and wife.

Petitioners are, and were during 1997, U.S. citizens.  Petitioners resided and worked in Canada throughout 1997.[2]  Petitioner Thomas Kappus (Mr. Kappus) has resided and worked in Canada since 1973.  During 1997, Mr. Kappus was employed as

---

[1]  The parties agree that if the Court holds for petitioners, then there is a deficiency in income tax of $2,166, and if the Court holds for respondent, then there is a deficiency in income tax of $6,152.

[2]  The parties agree, for purposes of this case, that petitioners were residents of Canada throughout 1997 for purposes of the Convention Between the United States of America and Canada With Respect to Taxes on Income and on Capital (hereinafter U.S.-Canada treaty), Sept. 26, 1980, U.S.-Can., T.I.A.S. No. 11087 (as in effect during 1997).

president of Taylor Freezers, Inc. Petitioner Louise Kappus
(Mrs. Kappus) has resided and worked in Canada since 1976.

Petitioners timely filed a joint 1997 Federal income tax
return (U.S. joint return). On their return, petitioners
reported taxable income of $244,211 and income tax liability of
$69,410. Petitioners reduced their U.S. income tax liability to
zero by applying the foreign tax credit of $69,410. Petitioners
did not pay any U.S. Federal income taxes for 1997.

Attached to their U.S. joint return, petitioners also filed
Form 6251, Alternative Minimum Tax-Individuals. On Form 6251,
petitioners reported a precredit tentative minimum tax of $61,556
pursuant to section 55(b)(1)(A), an alternative minimum tax
foreign tax credit of $55,400, a tentative minimum tax of $6,156,
and an alternative minimum tax liability of zero. Petitioners
attached a statement to their U.S. joint return in which they
claimed exemption for alternative minimum tax on the basis of the
U.S.-Canada tax treaty.[3]

In the notice of deficiency, respondent determined that
petitioners' precredit tentative minimum tax for 1997 was
$61,519. Respondent further determined that petitioners'
alternative minimum tax foreign tax credit could not exceed 90

---

[3] The parties agree that the statement properly disclosed
petitioners' treaty-based return position for purposes of sec.
6114.

percent of the precredit tentative minimum tax pursuant to section 59(a)(2). Accordingly, respondent determined a deficiency in tax of $6,152.

A. The Arguments of the Parties

Petitioners contend that the U.S.-Canada treaty and section 59(a)(2) are in direct conflict because the language of article XXIV, specifically paragraph 1, prohibits the application of section 59(a)(2). Petitioners further contend that the Revised United States-Canada Protocol to Amend the 1980 Treaty on Income and on Capital, September 26, 1980, as amended by the Protocols, June 14, 1983, and March 28, 1984, S. Treaty Doc. 104-4 (1995), (hereinafter Third Protocol), and Protocol Amending the Convention Between the United States of America and Canada With Respect to Taxes on Income and on Capital, September 26, 1980, as amended by the Protocols, June 14, 1983, March 28, 1984, and March 17, 1995, S. Treaty Doc. 105-29 (1997) (hereinafter Fourth Protocol), are the last expressions of sovereign will of the United States and, thus, override the application of section 59(a)(2).

Respondent contends that section 59(a)(2) and the U.S.-Canada treaty are in harmony with the result that petitioners are subject to the limitation on the amount of their alternative minimum tax foreign tax credit imposed by section 59(a)(2). Respondent relies, in part, on this Court's recent opinions in

Pekar v. Commissioner, 113 T.C. 158, 161 (1999), and in Brooke

v. Commissioner, T.C. Memo. 2000-194, affd. per curiam 13 Fed.

Appx. 7 (D.C. Cir. 2001), which held that section 59(a)(2) and

the double taxation provision of the Convention Between the

Federal Republic of Germany and the United States of America for

the Avoidance of Double Taxation and the Prevention of Fiscal

Evasion With Respect to Taxes on Income and Capital and to

Certain Other Taxes (hereinafter U.S.-Germany treaty), August 29,

1989, U.S.-Germany, art. 23, 30 I.L.M. 1778, 1779, were in

harmony.  Respondent further contends that if the Court were to

find that section 59(a)(2) and the treaty are in conflict, then

section 59(a)(2) is the last expression of the sovereign will of

the United States and must be applied to petitioners, in any

event.

B.   Applicable Statutes and U.S.-Canada Treaty Provisions

The U.S.-Canada treaty, signed on September 26, 1980, and

amending protocols, signed on June 14, 1983 (First Protocol)[4]

and March 28, 1984 (Second Protocol)[5], respectively, were entered

---

[4]   Protocol Amending the Convention Between the United States of America and Canada With Respect to Taxes on Income and on Capital, Sept. 26, 1980, S. Treaty Doc. 98-7 (1983) (hereinafter First Protocol).

[5]   Protocol Amending the Convention Between the United States of America and Canada With Respect to Taxes on Income and on Capital, Sept. 26, 1980, as amended by the Protocol on June 14, 1983, S. Treaty Doc. 98-22 (1984) (hereinafter Second
(continued...)

into force on August 16, 1984.  Article XXIV of the U.S.-Canada treaty generally prohibits double taxation by the United States and Canada, where one country has a right to tax income as the country of source and the other country may tax on the basis of residence.  The U.S. foreign tax credit allowed by the treaty applies to certain taxes imposed by Canada with respect to income from Canadian sources.  Paragraph 1 of Article XXIV provides the general rule as follows:[6]

> In the case of the United States, subject to the provisions of paragraphs 4, 5, and 6, double taxation shall be avoided as follows:  In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), the United States shall allow to a citizen or resident of the United States, or to a company electing to be treated as a domestic corporation, as a credit against the United States tax on income the appropriate amount of income tax paid or accrued to Canada * * * [U.S.-Canada treaty, art. XXIV, par. 1.]

Paragraph 4 of Article XXIV provides the following rule applicable to U.S. Citizens who are residents in Canada:

> 4.  Where a United States citizen is a resident of Canada, the following rules shall apply:
>
> (a)  Canada shall allow a deduction from the Canadian tax in respect of income tax paid or accrued

---

[5](...continued)
Protocol).

[6]  This portion of art. XXIV, par. 1, as cited herein, was not amended by the First or Second Protocol.  Under the First Protocol, we note that the only change to paragraph 1 was the deletion of the last sentence defining "appropriate amount".  The Second Protocol made no amendments to art. XXIV.

to the United States in respect of profits, income or gains which arise (within the meaning of paragraph 3) in the United States, except that such deduction need not exceed the amount of the tax that would be paid to the United States if the resident were not a United States citizen; and

(b)  For the purposes of computing the United States tax, the United States shall allow as a credit against United States tax the income tax paid or accrued to Canada after the deduction referred to in subparagraph (a).  The credit so allowed shall not reduce that portion of the United States tax that is deductible from Canadian tax in accordance with subparagraph (a).

In 1986, Congress revamped the alternative minimum tax imposed on noncorporate taxpayers.  Tax Reform Act of 1986, Pub. L. 99-514, sec. 701(a), 100 Stat. 2320 (herein referred to as Tax Reform Act of 1986).  As amended at that time, former section 55(a) imposed an alternative minimum tax on noncorporate taxpayers equal to the excess of the "tentative minimum tax" over the "regular tax".[7]  Former section 55(b) defined "tentative minimum tax" as an amount equal to 21 percent of so much of the "alternative minimum taxable income" for the taxable year as exceeded the "exemption amount", reduced by the "alternative minimum tax foreign tax credit" for the year.  Former section 59(a)(1) defined "alternative minimum tax foreign tax credit" as the foreign tax credit allowed by section 27 with certain

---

[7]    The term "regular tax" means "the regular tax liability for the taxable year (as defined in sec. 26(b)) reduced by the foreign tax credit allowable under section 27(a)".  Sec. 55(c)(1).

adjustments that we need not detail here, and former section 59(a)(2)(A), the predecessor of the provision at issue in this case, limited the credit to 90 percent of the precredit tentative minimum tax liability.  Therefore, no more than 90 percent of the alternative minimum tax could be offset under former section 59(a)(1).

With changes that are not material to this case, the alternative minimum tax provisions, as amended by the Tax Reform Act of 1986, apply to the taxable year in issue.  The current version of section 59(a)(2)(A), the provision at issue, states as follows:

(2) Limitation to 90 Percent of Tax.--

(A) In General.--The alternative minimum tax foreign tax credit for any taxable year shall not exceed the excess (if any) of--

(i) the pre-credit tentative minimum tax for the taxable year, over

(ii) 10 percent of the amount which would be the pre-credit tentative minimum tax without regard to the alterative tax net operating loss deduction and section 57(a)(2)(E).

In 1988, during its consideration of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, 102 Stat. 3342, Congress reviewed the relationship of the Internal Revenue Code and treaties and section 7852(d).  As originally enacted in 1954, former section 7852(d) had provided that no provision of the Internal Revenue Code was to apply in any case

where its application would be contrary to any treaty obligation of the United States in effect on the date of enactment of the 1954 Code. See S. Rept. 100-445 at 316-328 (1988), hereinafter referred to as 1988 Senate Report). More recently, Congress had specifically provided from time to time that it intended certain amendments of the Internal Revenue Code to prevail over treaties in case of a conflict. Id. In TAMRA, Congress amended section 7852(d) to provide that neither a provision of a treaty nor a law of the United States affecting revenue shall have preferential status by reason of its being a treaty or a law. TAMRA sec. 1012(aa)(1), 102 Stat. 3531.

Congress intended this change to place treaties and revenue statutes on the same footing, so that conflicts in their provisions would be resolved under the rule that the provision adopted later-in-time controls. 1988 Senate Report, supra at 321-322. Congress also intended this change to codify the approach of the courts under which the same canons of construction applied to the interaction of two statutes enacted at different times would be applied to the interaction of revenue statutes and treaties enacted and entered into at differenct times. Id. at 321.

In addition to amending section 7852(d), Congress enacted the following provision as section 1012(aa)(2) of TAMRA:

(2) Certain Amendments To Apply Notwithstanding Treaties.--The following amendments made by the Reform Act [viz Tax Reform Act of 1986] shall apply notwithstanding any treaty obligation of the United States in effect on the date of the enactment of the Reform Act:

(A) The amendments made by section 1201 of the Reform Act.

(B) The amendments made by title VII of the Reform Act to the extent such amendments relate to the alternative minimum tax foreign tax credit.

Thus, Congress specifically codified the later-in-time rule with respect to section 59(a)(2). Id. at 319.

The Third Protocol, signed on March 17, 1995, and entered into force on November 9, 1995, made changes to article XXIV affecting credits for Social Security tax, corporate tax exemptions, and the tax treatment of dividends, interest, and royalties. Third Protocol, Art. 12. These amendments did not alter the general rule of article XXIV found in paragraph 1, as stated above. Id.; U.S.-Canada treaty, art. XXIV, par. 1. Significantly, the Third Protocol amended paragraph 2 of Article II of the treaty, setting forth the taxes covered by the treaty. That paragraph was amended to read as follows:

2. Notwithstanding paragraph 1, the taxes existing on March 17, 1995 to which the Convention shall apply are:

\* \* \* \* \* \* \*

(b) In the case of the United States, the Federal income taxes imposed by the Internal Revenue Code of 1986.

Thus, the Third Protocol makes specific reference to the Internal Revenue Code of 1986.

The Fourth Protocol was signed on July 29, 1997, and entered into force on December 16, 1997.  The Fourth Protocol made no modifications to article XXIV of the U.S.-Canada treaty. There is no mention in the Third or the Fourth Protocol of the enactment of section 59 by the Tax Reform Act of 1986 or the enactment of section 1012(aa)(2) by TAMRA.

C.   Legal Discussion and Analysis

In the case where a treaty and a statute pertain to the same subject matter, the general rule is to afford a reading so as to give effect to both, if at all possible.  In Whitney v. Robertson, 124 U.S. 190, 194 (1888), the Supreme Court explained this general rule as follows:

> By the Constitution a treaty is placed on the same footing, and made of like obligation, with an act of legislation.  Both are declared by that instrument to be the supreme law of the land, and no superior efficacy is given to either over the other.  When the two relate to the same subject, the courts will always endeavor to construe them so as to give effect to both, if that can be done without violating the language of either; but if the two are inconsistent, the one last in date will control the other, provided always the stipulation of the treaty on the subject is self-executing. * * *

Therefore, we must decide whether the treaty and the statute can be read to give effect to both.  If there is no conflict between the two, "the Code and the treaty should be read harmoniously, to

give effect to each." Pekar v. Commissioner, 113 T.C. at 161. However, if there is a conflict between a Code provision and a tax treaty, the "last-in-time" rule will override the earlier provision. Id.; Whitney v. Robertson, supra at 194.

Petitioners' position, that they are not subject to section 59(a)(2), is based upon two elements. The first is their assertion that the U.S.-Canada treaty and section 59(a)(2) are in conflict and the second is their assertion that the U.S.-Canada treaty is later in time than section 59(a)(2) by reason of the Third and Fourth Protocols, with the result that the provisions of the treaty override section 59(a)(2). Both of these elements must be established in order for petitioners to prevail in this case. If the treaty and section 59(a)(2) are not in conflict, then effect must be given to the provisions of both without regard to which of the two is later in time. Pekar v. Commissioner, supra. In that event, we must find that petitioners are subject to section 59(a)(2). On the other hand, if there is a conflict between the two, and if section 59(a)(2), as opposed to the treaty, is found to be later in time, then section 59(a)(2) controls as the last expression of the sovereign will. Jamieson v. Commissioner, T.C. Memo. 1995-550, affd. without published opinion 132 F.3d 1481 (D.C. Cir. 1997).

As to the first element of their position, petitioners assert that the limitation on the foreign tax credit imposed by

section 59(a)(2) conflicts with the provisions of article XXIV of the U.S.-Canada treaty, entitled "Elimination of Double Taxation". Petitioners reject respondent's contention that section 59(a)(2) can be harmonized with the treaty because the treaty expressly makes the double taxation provisions subject to "the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof)". U.S.-Canada treaty, Article XXIV, paragraph 1. According to petitioners, the operation of paragraphs 4, 5, and 6, of article XXIV, especially paragraph 4 which specifically deals with United States citizens who reside in Canada, is not subject to change by the amendment of U.S. law. Furthermore, petitioners argue, even if the quoted language of paragraph 1 of article XXIV applies to paragraphs 4, 5, and 6 of article XXIV, section 59(a)(2) is not an amendment of U.S. law that fits within the parenthetical because it causes double tax and, thus, would not be in keeping with the general principle of the elimination of double taxation.

Petitioners' argument misses the mark. Petitioners urge us to find a conflict between section 59(a)(2) and Article XXIV of the treaty based upon the Third and Fourth Protocols, but they fail to address the effect of the enactment of section 1012(aa)(2) of TAMRA. As discussed above in section 1012(aa)(2) of TAMRA, Congress provided that section 701 of the Tax Reform

Act of 1986, including section 59(a)(2), would apply "notwithstanding any treaty obligation of the United States in effect on the date of the enactment of the Reform Act". The Third and Fourth Protocols on which petitioners rely, became effective after Congress enacted section 59(a)(2) of the Code and section 1012(aa)(2) of TAMRA. Neither of the later protocols mentions the limitation of the alternative minimum tax foreign tax credit imposed by section 59(a)(2) or section 1012(aa)(2) of TAMRA. Thus, neither the Third or Fourth Protocol contains a clearly expressed intent to supersede section 59(a)(2).

To the contrary, the language of the Third Protocol contemplates that the U.S.-Canada treaty accepted the changes to U.S. revenue laws that were made by the Tax Reform Act of 1986, including the enactment of section 59(a)(2). As noted above, article 1 of the Third Protocol expressly provides that the taxes existing on March 17, 1995, to which the treaty applies, in the case of the United States, are "the Federal income taxes imposed by the Internal Revenue Code of 1986." It was also the statute that substantially revised the alternative minimum tax on noncorporate taxpayers and enacted the predecessor of section 59(a)(2). Tax Reform Act of 1986, sec. 701, 100 Stat. 2320. Section 1012(aa)(2) of TAMRA which codified the last in time rule with respect to the revision of the alternative minimum tax rules was enacted as a technical amendment to the Tax Reform Act of

1986 and was made effective as if it had been included therein. TAMRA sec. 1012(aa)(4), 102 Stat. 3532. Thus, the Third Protocol specifically takes into account, as the taxes to which the convention shall apply, the alternative minimum tax as amended by the Tax Reform Act of 1986, including the limitation on the alternative minimum tax foreign tax credit imposed by section 59(a)(2). Accordingly, we find that there is harmony between provisions of the U.S.-Canada treaty and section 59. Pekar v. Commissioner, supra at 163; Brooke v. Commissioner, T.C. Memo. 2000-194.

In light of the above, it is unnecessary to address the second element of petitioners' position, that the U.S.-Canada treaty was the last expression of sovereign will. Since we find no conflict between the U.S.-Canada treaty and section 59(a)(2), petitioners are subject to section 59(a)(2), regardless which is later in time.

We have considered all the other arguments made by petitioners, and, to the extent we have not addressed them, find them to be without merit.

To reflect the foregoing,

Decision will be entered for respondent.